Robert Vinson BRANNUM, Appellant,

v.

William LAKE, Brig. Gen., U.S.A.F.,
et al., Appellees.

Nos. 01–5319, 01–5405.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 18, 2002.

Decided Dec. 6, 2002.

Richard B. Katskee, appointed by the court as amicus curiae, argued the cause for appellant. With him on the briefs were Evan M. Tager and Arnon D. Siegel.

Robert V. Brannum filed pro se briefs.

Laurie Weinstein, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were Roscoe C. Howard,

Jr., U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: GINSBURG, Chief Judge, HENDERSON, Circuit Judge, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Senior Circuit Judge:

Robert Brannum is an Individual Mobilization Augmentee ("IMA") in the United States Air Force Reserves. He was recalled to active duty pursuant to Article 2(d) of the Uniform Code of Military Justice (the "Uniform Code"), 10 U.S.C. § 802(d), which authorizes such recalls for a "member of a reserve component." After the recall he was subjected to punishment under the code. He sued in district court, claiming (among other things) that as an IMA he was not a member of a reserve "component" and therefore was not subject to recall under Article 2(d) or, consequently, to the defendants' later exercise of military jurisdiction. He sought damages and injunctive relief vacating the punishment. The district court dismissed all his claims, including the jurisdictional ones, invoking the doctrine of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which precludes actions against the government under the Federal Tort Claims Act for injuries "incident to service" and has since been extended to some other damage actions. See, e.g., *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987). We reverse, but solely as to Brannum's jurisdictional claim for equitable relief.

\*　\*　\*

According to the Air Force, IMAs such as Brannum "are assigned to active-duty units in specific wartime positions and train on an individual basis. Their mission is to augment active-duty manning by filling wartime surge requirements." Air Force Reserve Command, *USAF Fact Sheet*, available at http://www.af.mil/news/factsheets/Air_Force_Reserve_Command.html.

Brannum began an active duty tour at Holloman Air Force Base in New Mexico on March 21, 2000. On March 26 the Air Force began investigating complaints against him for sexual harassment. Brannum learned of the investigation and on June 8 departed Holloman, leaving a note saying that he was "voluntarily terminating" his active-duty tour. Because the Air Force regarded Brannum's tour of duty as requiring him to serve an additional ten days, it responded with an order on June 18, 2000, purportedly under 10 U.S.C. § 12301(d), recalling Brannum to active duty.

Brannum then filed suit in the United States district court for the District of Columbia, alleging that various Air Force officers and civilian employees had violated his due process rights, had engaged in race discrimination and reprisals for Brannum's having filed a complaint with the Inspector General, and had committed defamation, malicious prosecution, and various violations of Air Force regulations. He sought and obtained a temporary restraining order barring enforcement of the Air Force's recall order on the ground that § 12301(d) did not authorize the involuntary recall of reservists to active duty. The Air Force then rescinded the recall order, and the court dissolved the TRO.

About a month later, the Air Force issued new orders—this time under Article 2(d) of the Uniform Code, 10 U.S.C. § 802(d)—directing Brannum to report for active duty at Holloman so that he could be subjected to disciplinary punishment involving both the sexual harassment alle-

gations and his allegedly premature departure. Brannum again sought a TRO in the district court to enjoin enforcement of the recall order. This time he argued principally that, although § 802(d) authorizes involuntary recall of "member[s] of a reserve component" for proceedings under the Uniform Code, an IMA such as Brannum is not a member of any reserve component and therefore is not subject to such a recall. The district court denied the TRO, and Brannum reported again to Holloman.

The Air Force offered and Brannum chose the option of proceeding by way of non-judicial punishment in lieu of trial by court martial. The adjudicating officer dismissed the sexual harassment charges but found Brannum guilty of being absent without leave and ordered him demoted one rank from Master Sergeant to Technical Sergeant. Brannum appealed unsuccessfully to the appropriate higher officer.

When Brannum's active duty ended on September 28, 2000 he filed a second complaint in the district court, this time naming a larger set of Air Force officers and civilian employees. In the second complaint he restated the claims from his pending suit and added new claims under the Constitution and various federal statutes and regulations. Most important for our purposes, he renewed his contention that the defendants had violated his constitutional and statutory rights by subjecting him to punishment in excess of their jurisdiction under the Uniform Code at a time when he was in fact in civilian status and not subject to recall under Article 2(d). He also alleged that they had violated his rights by, inter alia, such procedural violations as pre-judging his case, failing to disclose the identity of his accusers, and failing to produce copies of the evidence against him. The second complaint sought compensatory and punitive damages and an injunction setting aside his non-judicial punishment.

The district court dismissed all of Brannum's claims for lack of subject matter jurisdiction under the *Feres* doctrine. Noting that this court had not yet addressed whether the doctrine extended to equitable claims, the district court held that the *Feres* doctrine applied to "*non-facial* constitutional challenges of military decisions." (Emphasis supplied.) Accordingly it dismissed not only his claims for money damages but also his claims to equitable relief. Brannum appealed.

■ In January, we issued an order granting defendants' motion for summary affirmance of the district court opinion with regard to all but Brannum's equitable claims, but instructed the clerk "to withhold issuance of the mandate herein until resolution of the remainder of the appeal." See Order of January 30, 2002. In addition, we ordered briefing and argument on the issue of Brannum's equitable claims. We now reverse the district court's decision that it did not have jurisdiction to consider Brannum's equitable claim that the military unlawfully recalled him for punishment. While nonmilitary courts are not generally permitted to intervene in the operation of military justice, Brannum's complaint regarding his allegedly illegal recall goes to whether the military had jurisdiction over him under 10 U.S.C. § 802(d) in the first place. The *Feres* doctrine poses no bar to such a claim.

\* \* \*

■ First, as the district court correctly noted, the *Feres* doctrine forecloses damages actions by service members against the government for injuries occurring "incident to service" in the military. "The special nature of military life—the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel—would be undermined by a judicially created remedy

exposing officers to personal liability at the hands of those they are charged to command." *Chappell v. Wallace,* 462 U.S. 296, 304, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983).

██ The Supreme Court has made clear, however, that *Feres* does not bar all suits by service personnel:

> "[O]ur citizens in uniform may not be stripped of basic rights simply because they have doffed their civilian clothes." This Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service.

*Id.* at 304, 103 S.Ct. at 2368 (1983) (quoting Earl Warren, "The Bill of Rights and the Military," 37 N.Y.U. L.Rev. 181, 188 (1962)); see also *United States v. Stanley,* 483 U.S. 669, 683, 107 S.Ct. 3054, 3063–64, 97 L.Ed.2d 550 (1987) (noting that *Chappell* "referred to redress designed to halt or prevent the constitutional violation rather than the award of money damages.").

In finding Brannum's suit barred, the district court drew a line between facial challenges (permitted) and as-applied challenges (not permitted). This cannot be correct. First, as Brannum points out, the Supreme Court and this court have heard numerous as-applied challenges to military policies. See, e.g., *Goldman v. Weinberger,* 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) (as-applied Free Exercise challenge to Air Force's prohibition against wearing yarmulke while in uniform); *Steffan v. Perry,* 41 F.3d 677, 693 (D.C.Cir.1994) (en banc) (facial and asapplied Equal Protection challenges to regulations prohibiting homosexuals from attending the Naval Academy or serving in the Navy). Thus some as-applied challenges are plainly permitted. Furthermore, the district court's proposed distinction would create the anomalous result that suits seeking facial or wholesale invalidation of military policies would be permitted, while those seeking more targeted as-applied relief would be barred. In light of *Feres*'s concern about excessive judicial interference with military decision-making, and the general constitutional preference for as-applied challenges over facial ones, see, e.g., *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), such a result would be bizarre. To the extent that *Speigner v. Alexander,* 248 F.3d 1292 (11th Cir.2001), invoked such a distinction in denying jurisdiction over a separated National Guard officer's suit for reinstatement, we respectfully disagree.

██ While we think it clear that at least some equitable claims relating to military service are not barred by the *Feres* doctrine, this case does not require us to ascertain *Feres*'s exact bounds. Here Brannum asserted that his due process and other rights were violated by the military taking actions against him in excess of its jurisdiction under the Uniform Code. This jurisdictional claim falls squarely within the Supreme Court's decision in *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). There the Court held that the Article III courts had jurisdiction to entertain an Army captain's suit seeking an injunction against pending court martial proceedings based on conduct that he claimed was not "service related" and thus not within the court martial jurisdiction. *Id.* at 740, 744–53, 95 S.Ct. at 1304, 1306–11. See also *McKinney v. White,* 291 F.3d 851, 853 (D.C.Cir.2002) (summarizing *Schlesinger*). In light of *Schlesinger,* the *Feres* doctrine cannot preclude equitable suits challenging military jurisdiction under the Uniform Code. (For these purposes we see no distinction between courts martial and non-judicial punishments under the Uniform Code; "correctional custody" of up to seven days is permissible under the latter.

See Article 15(b)(2)(B), 10 U.S.C. § 815(b)(2)(B).)[1] Because *Feres* does not apply, the defendants' argument that our summary affirmance in January created "law of the case" that Brannum's alleged injuries arose "incident to service" under *Feres* is irrelevant; even if Brannum's alleged injuries were "incident to service," *Schlesinger* permits an equitable suit claiming that the military has exercised Uniform Code authority without jurisdiction.

Here, Brannum's contention that his position as an IMA excludes him from the reach of Article 2(d) and thus from recall and Uniform Code proceedings is just such a jurisdictional claim. Indeed, during argument counsel for the Air Force conceded that a civilian court could review an allegation that the military had made a "fundamental mistake in jurisdiction." Thus while Brannum may yet face other obstacles to the equitable relief he seeks, neither *Feres* nor the facial vs. as-applied distinction relied upon by the district court would be among them.

 While we see *Feres* as no bar to Brannum's jurisdictional claim, we affirm the district court's dismissal of his other claims. As the Court said in *Schlesinger,*

"[T]he acts of a court martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts, by writ of prohibition or otherwise."

420 U.S. at 746, 95 S.Ct. at 1307 (quoting *Smith v. Whitney,* 116 U.S. 167, 177, 6 S.Ct. 570, 575, 29 L.Ed. 601 (1886)). Indeed, that rule long antedates *Feres* and, although reflecting similar sensitivity to the special requirements of the military, does not depend on *Feres.* See also *McKinney,* 291 F.3d at 853; *Doe v. Sullivan,* 938 F.2d 1370, 1381 n. 16 (D.C.Cir. 1991). This prohibition surely includes challenges to non-judicial punishment offered in lieu of a court martial.

\* \* \*

We affirm the district court's dismissal with respect to Brannum's non-jurisdictional claims, reverse as to the claim for equitable relief against the defendants' alleged excess of jurisdiction, and remand to the district court for further proceedings consistent with this opinion.

*So ordered.*

---

**1.** Although the district court in its recitation of the facts noted that "plaintiff, pursuant to 10 U.S.C. § 802(d) was properly recalled to active duty," we do not consider the language to constitute a finding as to the recall's propriety, especially in light of the court's dismissal of the entire case for lack of subject matter jurisdiction.