# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 17, 2005      Decided January 27, 2006

No. 04-5382

CHARLES H. PIERSALL, III
APPELLANT

v.

DONALD C. WINTER, SECRETARY OF THE NAVY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01770)

———

*Eugene R. Fidell* argued the cause for appellant. With him on the briefs were *Matthew S. Freedus* and *Charlotte E. Cluverius*.

*Barton F. Stichman*, *Arnon D. Siegel*, and *Michael C. Higgins* were on the brief of *amicus curiae* The National Veterans Legal Services Program in support of appellant.

*Peter D. Blumberg*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, *R. Craig Lawrence*, Assistant U.S. Attorney, and *D. Jacques Smith*, Commander, Office of the

Judge Advocate General. *Michael J. Ryan*, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG, *Chief Judge*, and GARLAND and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Charles Piersall, a Commander in the United States Navy, challenges the decision of the Board for Correction of Naval Records (hereinafter Board or BCNR) not to reverse the effects of his non-judicial punishment.[*] The district court, relying upon our decision in *Brannum v. Lake*, 311 F.3d 1127 (2002), dismissed the case for lack of subject matter jurisdiction. We reverse the order of the district court and remand the matter for that court to review the decision of the Board pursuant to § 706 of the Administrative Procedure Act (APA), 5 U.S.C. § 706.

## I. Background

On February 11, 1998 then-Lieutenant Commander Piersall was the Executive Officer and Command Duty Officer of the USS *La Jolla*, a nuclear submarine, when it collided with and sank a Korean fishing vessel off the coast of Chinhae, Republic of Korea. After rescuing the crew of the fishing vessel, the *La Jolla* proceeded to the Chinhae naval base. On February 19 the commander of Submarine Group 7, Rear Admiral Albert H. Konetzni, Jr., initiated a proceeding -- known in the Navy as a

---

[*]For simplicity we refer throughout to the decision of the Board, but the final agency action under review is in fact the decision of a designated representative of the Secretary of the Navy approving the recommendation of the Board.

"mast" -- to determine whether to impose non-judicial punishment upon any member of the crew of the *La Jolla*, which under Article 15 of the Uniform Code of Military Justice a commanding officer may do "for minor offenses without the intervention of a court-martial." 10 U.S.C. § 815(b). Admiral Konetzni found Piersall had been derelict in his duties as the second in command of the *La Jolla* because he negligently failed to prevent the collision with the fishing vessel. As punishment, he directed that a letter of reprimand be made part of Piersall's service record. Piersall unsuccessfully appealed the punishment to the next superior authority, as permitted under 10 U.S.C. § 815(e), and then sought relief from the Board for Correction of Naval Records.

Under 10 U.S.C. § 1552(a), the Secretary of a military department (Army, Navy, or Air Force) may act "through boards of civilians" to "correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." Piersall petitioned the Board to reverse the effects of his non-judicial punishment by expunging from his record both the mast and the letter of reprimand on the ground that the mast was invalid because he had not been afforded an opportunity to refuse non-judicial punishment. A member of the Navy may refuse non-judicial punishment and demand trial by a court martial unless he is "attached to or embarked in a vessel." 10 U.S.C. § 815(a). Piersall argued he was neither attached to nor embarked in the *La Jolla* at the time of the mast, which was conducted in a building on the Chinhae naval base approximately two miles from the shipyard where the *La Jolla* was docked.

The Board concluded (1) the site of the mast was "in sufficiently close proximity to [the] *La Jolla* to be deemed in the ship's immediate vicinity"; (2) Piersall "should be viewed as

being in the process of boarding" the vessel at the time of the mast because he returned to the ship after the mast and "would have returned as [Executive Officer] but for the guilty finding"; and (3) therefore he was "attached to" the *La Jolla* and had no right to refuse non-judicial punishment. The Board also noted that Piersall could not have refused non-judicial punishment had Admiral Konetzni elected to conduct the hearing on board the *La Jolla* rather than ashore. The decision of the Board to deny relief was approved by an Assistant General Counsel of the Navy on behalf of the Secretary of the Navy.

Piersall then brought this suit in district court claiming the Board's decision not to reverse the effects of his non-judicial punishment was arbitrary and capricious, unsupported by substantial evidence, and contrary to law because he was not "attached to" the *La Jolla* at the time of his mast and he should have been afforded an opportunity to demand trial by a court martial. He sought (1) vacatur of the Board's decision; (2) expungement from his record of the mast and of the letter of reprimand; and (3) costs and attorneys' fees.

The Secretary filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim, arguing Piersall lost any right he might have had when he failed to request trial by a court martial prior to the mast. The Secretary also argued the complaint should be dismissed for lack of subject matter jurisdiction because the district court lacks jurisdiction to review the decision of the Board. Piersall opposed the Secretary's motion to dismiss and moved for summary judgment.

The district court granted the Secretary's motion to dismiss for lack of subject matter jurisdiction. Citing our decision in *Brannum*, 311 F.3d 1127, the district court concluded that

because Piersall's claim did not involve a challenge to military jurisdiction, his claim was barred by the non-justiciability doctrine of *Feres v. United States*, 340 U.S. 135 (1950).

## II.  Analysis

On appeal Piersall argues the district court erroneously dismissed his case for lack of jurisdiction and urges us to reach the merits of his challenge to the Board's decision.  We review *de novo* the district court's grant of a motion to dismiss for lack of subject matter jurisdiction.  *See Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1085 (1998).  We begin with jurisdiction and conclude that Piersall's claims are justiciable, but we do not reach the merits of his claims.

## A.  Jurisdiction

These are not uncharted waters.  We have many times reviewed the decisions of boards for correction of military records "in light of familiar principles of administrative law." *See, e.g.*, *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (1989); *see also Turner v. Dep't of Navy*, 325 F.3d 310, 313-14 (2003); *Musengo v. White*, 286 F.3d 535, 538 (2002); *Cone v. Caldera*, 223 F.3d 789, 793 (2000); *Frizelle v. Slater*, 111 F.3d 172, 176 (1997); *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1400 (1995); *Kidwell v. Dep't of the Army*, 56 F.3d 279, 286 (1995). In doing so we were following the lead of the Supreme Court. *See Kreis*, 866 F.2d at 1512, in which we relied upon *Chappell v. Wallace*, 462 U.S. 296, 303-04 (1983) (indicating decisions of the BCNR are "subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence").

In *Kreis* we also acknowledged the "fundamental and highly

salutary principle" that "[j]udges are not given the task of running the [military]." 866 F.2d at 1511 (quoting *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953)); *see also Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). In light of that principle, we held nonjusticiable a serviceman's claim for retroactive promotion. We held justiciable, however, the serviceman's "more modest request" to review "the reasonableness" of the decision of a military board of correction pursuant to the standards of the APA. *Kreis*, 866 F.2d at 1511. Review of that decision would not interfere unduly with military matters because "[a]djudication of [such] claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." *Id.* In other words, such review

> would not require the district court to substitute its judgment for that of the Secretary .... The court would only require the Secretary, on remand, to explain more fully the reasoning behind his decision and, with respect to his denial of a retroactive promotion, to apply the appropriate legal standard.

*Id.* at 1512.

Contrary to the Secretary's understanding of *Brannum*, 311 F.3d 1127, nothing in that case overruled, or limited the scope of review to be applied in, the *Kreis* line of cases. Brannum, a reservist in the Air Force, was subjected to non-judicial punishment and demotion for having been absent without leave. *Id.* at 1128. He filed suit making claims of malicious prosecution, defamation, and discrimination, among others, against various officers and civilian employees of the Air Force. *Id.* at 1128-29. He also sought to vacate his non-judicial punishment on the ground the Air Force did not have

jurisdiction to impose it because, as an Individual Mobilization Augmentee in the Air Force Reserves, he was not a "member of a reserve component" within the meaning of 10 U.S.C. § 802(d) and therefore could not be recalled to active service in order to face non-judicial punishment. *Brannum,* 311 F.3d at 1128-29. He did not petition for relief from a military board of correction. The district court dismissed all Brannum's claims on the basis of the Supreme Court's decision in *Feres* that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146; *see also United States v. Stanley*, 483 U.S. 669, 678 (1987) (extending *Feres* to all constitutional tort claims otherwise authorized under *Bivens*).

We upheld the dismissal of Brannum's tort claims but not the dismissal of his equitable claim challenging military jurisdiction. We did not need to establish the metes and bounds of the *Feres* doctrine in order to see that it did not extend to the jurisdictional objection. *See Brannum*, 311 F.3d at 1130, where we cited *Schlesinger v. Councilman*, 420 U.S. 738, 744 (1975), in which the Supreme Court held that civil courts have subject matter jurisdiction to hear a challenge to the jurisdiction of a court martial.

In the present case, the district court, relying upon *Brannum*, held Piersall's claims barred by the *Feres* doctrine. As that court read *Brannum*, we there "solidified a boundary to the *Feres* doctrine" between service members' claims that challenge military jurisdiction and those that do not and hence "dismissed all of Brannum's claims other than the jurisdictional claim." Deeming Piersall's claim non-jurisdictional in nature because he argues only that he was entitled to trial by a court martial, not that the military lacked jurisdiction, the district court dismissed his claim pursuant to *Feres*. The Secretary urges us

to adopt the same reasoning.

The Secretary overreads *Brannum*. That the *Feres* doctrine does not bar an equitable suit challenging military jurisdiction does not imply that it does bar other challenges related to the administration of military justice. Although the limits of the *Feres* doctrine remain indistinct, we do know that the principle forbidding judicial interference with military decisions, which principle underlies *Feres*, *Chappell*, and related cases, does not preclude review under the APA of decisions of military boards of correction. *See Chappell*, 462 U.S. at 303; *Kreis*, 866 F.2d at 1511. *Brannum* did nothing to alter this long-standing rule. Indeed, four months after *Brannum*, in *Turner v. Department of Navy*, we reviewed under the APA a decision of the Secretary of the Navy to reject the recommendation of the Board that he undo the effects of Turner's non-judicial punishment. *See* 325 F.3d at 313-14.

The Secretary argues that review of the Board's decision is barred not only by the *Feres* doctrine but also by what he describes as the "general prohibition recognized in *Schlesinger* against Article III courts interfering in the military justice system." The military justice system, however, is not under review in this case; Piersall challenges not the decision of a military court or even of his commanding officer but the decision of a civilian administrative board, as did the plaintiff in *Turner*. As we pointed out in *Kreis*, "[t]he APA erects a 'presumption of judicial review' at the behest of those adversely affected by agency action," 866 F.2d at 1513 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)), and the Secretary does not even raise an argument that this presumption is overcome with respect to the decisions of civilian boards for correction of military records. Nor is the legislative context conducive to such an argument. Although the Congress has

expressly prohibited boards of correction from reviewing the records of courts martial except in very limited circumstances, *see* 10 U.S.C. § 1552(f), it has not done so with respect to non-judicial punishment.[*] We are aware of no reason, therefore, to reconsider the well-settled rule that the decisions of boards for correction of military records are subject to review under the APA. *See Abbott Labs.*, 387 U.S. at 140 ("[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review").

The Secretary argues such review will lead us into territory cordoned off by the Supreme Court's teaching in *Schlesinger* that "the acts of a court martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts, by writ of prohibition or otherwise," *see* 420 U.S. at 746 (citation omitted), which teaching we concluded in *Brannum* applies to proceedings for the imposition of non-judicial punishment. *See* 311 F.3d at 1131. Again the Secretary reads a case too broadly.

---

[*]This should come as no surprise because for courts martial the "Congress has established a complete and distinct" system of procedural protections and levels of appellate review. *See McKinney v. White*, 291 F.3d 851, 853-54 (D.C. Cir. 2002); *see also Burns v. Wilson*, 346 U.S. 137, 141 (1953) (describing "[r]igorous provisions" and "hierarchy" of review applicable to courts martial). The boards, in contrast, typically consider the decision of a commanding officer made with minimal procedural protection and appealable only to the "next superior authority" per 10 U.S.C. § 815(e). *See* Dwight H. Sullivan, *Overhauling the Vessel Exception*, 43 Naval L. Rev. 57, 58-59 (1996) (identifying procedural rights not afforded during Article 15 proceeding, including legal representation, suppression of unconstitutionally obtained evidence, confrontation of one's accuser, and decision by a panel of disinterested service members).

In *Schlesinger*, the Supreme Court did not ground its rule against review of a court martial in a broad principle of abstention, as it did when holding that a civil court ordinarily should not enjoin an impending court martial, *see* 420 U.S. at 754. Rather, "recogniz[ing] that, of necessity, '[military] law ... is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment,'" the court held, pursuant to "settled principles of the law of judgments," that the "valid, final judgments of military courts, like those of any court of competent jurisdiction not subject to direct review for errors of fact or law, have res judicata effect and preclude further litigation of the merits." *Id.* at 746-47 (quoting *Burns*, 346 U.S. at 140); *see also* 10 U.S.C. § 876 (judgments of courts martial after appeal are final, conclusive, and binding upon courts, agencies, and officers of the United States).  With the exception of a collateral attack challenging the validity of a judgment for "lack of jurisdiction or some other equally fundamental defect," review by a civil court of a judgment issued by a military court is barred.  *Schlesinger,* 420 U.S. at 746-48 (the Congress has not "conferred on any Art. III court jurisdiction directly to review court-martial determinations" and collateral attack is "barred unless it appear[s] that the judgments [are] void"); *see also McKinney*, 291 F.3d at 854 (civil courts "lack[] jurisdiction of a direct appeal of a court martial"); *Shaw v. United States*, 209 F.2d 811, 812-13 (D.C. Cir. 1954) ("[W]e are clear that this court lacks jurisdiction to undertake the direct review which petitioners seek").

Piersall's challenge to the decision of the Board, however, is not a request for review of Admiral Konetzni's decision imposing non-judicial punishment, much less a request for review of the judgment of a military court.  Piersall seeks review only of a decision rendered by a civilian administrative board established by the Congress separate and apart from the system

of military courts and appeals and charged with the authority to change a military record when necessary to "correct an error" or "remove an injustice." And even with respect to that decision, as we explained in *Kreis*, judicial review in this context involves "an unusually deferential application of the 'arbitrary or capricious' standard" of the APA. 866 F.2d at 1514 ("It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '*when he considers it necessary* to correct an error or remove an injustice,' 10 U.S.C. § 1552(a) (emphasis added)").

The Secretary also cites and quotes our decision in *McKinney*, 291 F.3d at 853, in support of his argument that review here will undermine "the comprehensive military justice system enacted by Congress [which] reflects a legislative effort 'to balance ... military necessities against the equally significant interest in ensuring fairness to servicemen charged with military offenses.'" In *McKinney*, we concluded we were without jurisdiction to review under the APA the Judge Advocate General's denial of a serviceman's request to set aside his court martial conviction and sentence because, citing *Schlesinger*, we said it would have required us to "review [a] direct appeal[] from the highest military official of a general court martial." *Id.* at 854. We found "Congress' establishment ... of a separate judicial system for courts martial review ... convincing evidence that Congress could not have intended Judge Advocate General review of courts martial to fall within APA review of agency decisions." *Id.* at 853. Equally convincing here is the Congress's establishment of a civilian administrative board with authority to correct the records of proceedings for the imposition of non-judicial punishment. APA review of that board's decisions does not invite the review of military judgments prohibited in the *Schlesinger* line of cases and therefore does nothing to upset the balance with which the Secretary is

rightfully concerned.

For the foregoing reasons, we hold that the district court has jurisdiction to consider Piersall's petition to review the decision of the BCNR.

B.  The Merits

Piersall argues that if we hold the district court has subject matter jurisdiction of his claims, as we do, then we should proceed to the merits of his case rather than remand it to the district court for further proceedings because "continuing prejudice flow[s] from the presence of the mast and letter of reprimand in [his] service record."  Piersall also argues we may conserve judicial resources by proceeding to the merits because the parties' legal positions are fully presented in the record compiled by the Board and he has submitted the documents needed for APA review on appeal.  *See Walker v. Jones*, 733 F.2d 923, 928 n.7 (D.C. Cir. 1984) ("The defenses present questions of law fully briefed by the parties.  Their adjudication now, informed by an adversarial airing, should occasion no surprise."); *Grace v. Burger*, 665 F.2d 1193, 1197 n.9 (D.C. Cir. 1981), *aff'd in part and vacated in part on other grounds sub nom. United States v. Grace*, 461 U.S. 171 (1983).  The Navy counters with the observation that, because the district court dismissed the case at the threshold, neither the applicability of the "vessel exception" nor the other issues underlying Piersall's motion for summary judgment were "developed, briefed, or reviewed at the District Court level," nor was a Certified Administrative Record ever submitted to that court.

Of course, "the general rule ... [is] that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).  Although the

question whether to depart from the general rule is ultimately left "to the discretion of the courts of appeals," *id.* at 121, we see no reason here to depart from the usual procedure. The district court, having dismissed the case for lack of jurisdiction, did not have the benefit of briefing from the Secretary with respect to most of the issues presented. This is important because the district court will be applying a particularly deferential standard of review, and the Secretary is entitled to submit an argument tailored to that standard. Therefore, we shall remand the matter to the district court without reaching the merits of Piersall's case.

## III. Conclusion

For the foregoing reasons, the decision of the district court is reversed and this case is remanded for that court to review the decision of the BCNR pursuant to § 706 of the APA.

*So ordered.*