**Debra L. SMITH, Plaintiff,**

v.

**Francis J. HARVEY, Defendant.**

**Civil Action No. 06–1117 (RWR).**

United States District Court,
District of Columbia.

March 21, 2008.

Debra L. Smith, Overland Park, KS, pro se.

Brian Christopher Baldrate, Steven M. Ranieri, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

RICHARD W. ROBERTS, District Judge.

Pro se plaintiff Debra L. Smith brought this suit against the Secretary of the United States Army, alleging deprivations of her property and liberty interests in violation of her due process rights under the Fifth Amendment, violations of her Sixth Amendment rights, and violations of the Administrative Procedure Act ("APA") in relation to the involuntary separation proceedings that have been initiated against her. The Secretary moved to dismiss Smith's APA and constitutional claims for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. Because Smith's APA claim is not ripe for judicial review, that claim will be dismissed. In addition, because Smith has not sufficiently alleged a deprivation of any constitutionally-protected liberty or property right under the Fifth Amendment, and because she is not being subjected to a criminal prosecution so as to render the Sixth Amendment applicable in this case, she has failed to state any constitutional claim upon which relief can be granted, and Smith's constitutional claims will also be dismissed.

## BACKGROUND

Smith is a major in the United States Army Reserves ("USAR"). (*See* Pl.'s 2d Am. Compl. ("2d Am. Compl.") at 2.) She is facing involuntary separation from the USAR under Army Regulation 135–175[1]

---

1. Army Regulation 135–175 provides that a USAR officer can be involuntarily separated only after a board of officers has approved the recommended separation. (*See* Mot. to Dismiss at 2.)

because of alleged misconduct and conduct unbecoming an officer. (*See* Mem. in Supp. of Def.'s Mot. to Dismiss ("Mot. to Dismiss") at 3–4.) When the involuntary separation proceedings began, the USAR placed a suspension of favorable personnel action, also known as a flag, on Smith's personnel file.[2] (*See id.* at 4.) Although Smith was given notice that she was being considered for involuntary separation and was given the option of appearing before a separation board (*see id.* at 5), she has declined to appear before the separation board.[3] (*See* 2d Am. Compl. at 23.) Instead, Smith brought this action challenging the separation proceedings as violative of her due process rights under the Fifth Amendment, and violative of the Sixth Amendment and the APA. (*See id.* at 9.) The Secretary has moved to dismiss Smith's APA claim, arguing that it is not ripe and does not state a claim for which relief can be granted since no final agency decision has been rendered as is required before an action under the APA can be brought. Further, the Secretary asserts that Smith's due process claims should be dismissed for failure to state a claim because Smith has not alleged a deprivation of a constitutionally-protected interest, and that Smith's Sixth Amendment claims should be dismissed because she is not being subjected to a criminal prosecution.

## DISCUSSION

### I. APA CLAIM

■■■ "On a motion to dismiss for lack of subject-matter jurisdiction pursuant to [Federal] Rule [of Civil Procedure] 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." *Shuler v. United States*, 448 F.Supp.2d 13, 17 (D.D.C.2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In reviewing the motion, a court accepts as true all of the factual allegations contained in the complaint, *Artis v. Greenspan*, 158 F.3d 1301, 1306 (D.C.Cir.1998), and may also consider "undisputed facts evidenced in the record." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C.Cir.2003); *see also Tootle v. Sec'y of Navy*, 446 F.3d 167, 174 (D.C.Cir.2006) (explaining that a court may look beyond the pleadings to resolve disputed jurisdictional facts when considering a motion to dismiss under Rule 12(b)(1)). The "nonmoving party is entitled to all reasonable inferences that can be drawn in her favor." *Artis*, 158 F.3d at 1306.

■■■ The Secretary argues that the court lacks subject-matter jurisdiction over Smith's APA claim because that claim is not ripe for judicial review as no final agency decision has been made concerning whether to involuntarily separate Smith from the USAR. (*See* Mot. to Dismiss at 7–8.) To determine whether a case is ripe for review, a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). "[T]he fitness of an issue for judicial decision depends on whether it is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether

---

**2.** A flag prevents a person who is being considered for involuntary separation from receiving any favorable action, such as promotion, transfer, and awards while the separation is pending. (*See* Mot. to Dismiss at 4 n. 2.)

**3.** The Secretary contends that had Smith elected to appear before the separation board, she would have had the right to "be represented by counsel, challenge members, present evidence, access records, question witnesses, and testify or remain silent." (Mot. to Dismiss at 23.)

the agency's action is sufficiently final." *Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 424 (D.C.Cir.2007) (internal quotation omitted). Hardship is measured by considering "not whether [the parties] have suffered any direct hardship, but rather whether postponement will impose an undue burden on the claimant or would benefit the court." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 440 F.3d 459, 464 (D.C.Cir.2006).

▆▆▆ The finality requirement is to be applied in a flexible and pragmatic manner. *See Abbott Labs.*, 387 U.S. at 149–50, 87 S.Ct. 1507. "The interest in postponing review is powerful when the agency position is tentative. Judicial review at that stage improperly intrudes into the agency's decision making process. It also squanders judicial resources since the challenging party still enjoys an opportunity to convince the agency to change its mind." *Ciba–Geigy Corp. v. EPA*, 801 F.2d 430, 435–36 (D.C.Cir.1986) (citations omitted). "An agency action is final if it is 'a consummation of the agency's decision making process,' not merely tentative or interlocutory, and it is 'one by which rights or obligations have been determined, or from which legal consequences flow.' " *Isenbarger v. Farmer*, 463 F.Supp.2d 13, 20 (D.D.C.2006) (quoting *Harris v. FAA*, 353 F.3d 1006, 1010 (D.C.Cir.2004)).

▆▆▆ Smith's APA claim is not sufficiently final to make it ripe for judicial review. Smith brought this claim after receiving notification that she was being considered for involuntary separation from the USAR.

(*See* Mot. to Dismiss at 5.) However, the separation board which will ultimately decide whether to separate Smith from the USAR has not yet met or made a final decision. (*See id.*) This board will review the evidence against Smith at a hearing, where Smith will have the option of presenting her own defense and questioning any witnesses. (*See id.* at 23.) No final decision on Smith's separation has yet been made, and the separation board could well decide to retain her in the USAR, negating any need for judicial review.

To review Smith's APA claim at this stage would "squander[ ] judicial resources," because Smith "still enjoys an opportunity to convince the [USAR] to change its mind." *Ciba–Geigy Corp.*, 801 F.2d at 435–36. The USAR's initiation of separation proceedings is a tentative action not fit for judicial review; one can only speculate as to the final outcome of any proceedings. Judicial review at this stage would inappropriately intrude upon an ongoing and incomplete agency decision-making process. Postponement of any decision here would not serve as a hardship to Smith given that a final decision in Smith's favor at the involuntary separation proceedings may render this action unnecessary. Because Smith's claim is not sufficiently final and because Smith has not shown that she has suffered hardship, her APA claim is not ripe for judicial review and will be dismissed.[4]

## II. CONSTITUTIONAL CLAIMS

▆▆▆ The Secretary argues that Smith's constitutional claims under the

---

4. The Secretary also argues that Smith failed to state a claim upon which relief can be granted under the APA because she did not plead any final agency action in her amended complaint. (*See* Mot. to Dismiss at 11.) For a cause of action to lie under the APA, the challenged agency action must be final. *Trudeau v. FTC*, 456 F.3d 178, 188–89 (D.C.Cir. 2006). The APA states that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. Smith concedes that the agency action she is challenging is not final. (*See* Opp'n at 3.) Thus, her APA claim, in addition to not being ripe, fails to state an actionable claim.

Fifth and Sixth Amendments should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[5] In considering a motion under Rule 12(b)(6), a court must take "the factual allegations of the complaint ... as true, and any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C.Cir.2003). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, — U.S. —, —, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (internal citations and quotations omitted) (alteration in original). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true...." *Id.*

### A. Fifth Amendment Claims

Smith alleges that the flag placed on her personnel file deprived her of property and liberty interests without due process of law in violation of the Fifth Amendment. (See 2d Am. Compl. at 25.) She insists that 10 U.S.C. § 14902 "is unconstitutional as it violates a solider's [Fifth] [A]mendment due process rights" because the statute enables the initiation of an involuntary separation "at any time." [6] (2d Am. Compl. at 13.) Further, Smith generally claims that the Army's procedures for promulgating its regulations are unconstitutional because the "regulations can change often—very often—without much scrutiny." (Pl.'s Opp'n at 4–5.)

 "[D]ue process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *McManus v. Dist. of Columbia*, 530 F.Supp.2d 46, 72 (D.D.C.2007) (citing *Mathews v. Eldridge*, 424 U.S. 319, 323, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). In order to determine whether a litigant's due process rights were adequately protected, courts consider:

(1) the private interests ... affected by the official action;

(2) the risk of an erroneous deprivation of such an interest through the proce-

---

5. To the extent Smith is seeking monetary damages for alleged constitutional injuries (see 2d Am. Compl. at 34), her claims must be dismissed since the doctrine established in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny "forecloses damages actions by service members against the government for injuries occurring 'incident to service' in the military." *Brannum v. Lake*, 311 F.3d 1127, 1129 (D.C.Cir.2002).

6. Section 14902 ("Separation for substandard performance and for certain other reasons") reads as follows:

(a) Substandard performance of duty. The Secretary of the military department concerned shall prescribe, by regulation, procedures for the review *at any time* of the record of any reserve officer to determine whether that officer should be required, because that officer's performance has fallen below standards prescribed by the Secretary concerned, to show cause for retention in an active status.

(b) Misconduct, etc. The Secretary of the military department concerned shall prescribe, by regulation, procedures for the review *at any time* of the record of any reserve officer to determine whether that officer should be required, because of misconduct, because of moral or professional dereliction, or because the officer's retention is not clearly consistent with the interests of national security, to show cause for retention in an active status.

10 U.S.C. § 14902 (emphasis added).

dures used and the value, if any, of additional or substitute procedural safeguards; and

(3) the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*See Elkins v. Dist. of Columbia,* 527 F.Supp.2d 36, 48 (D.D.C.2007) (citing *Mathews,* 424 U.S. at 335, 96 S.Ct. 893). Thus, "[f]or a plaintiff to survive a motion to dismiss under Rule 12(b)(6), [s]he must allege, at a minimum, that [s]he has been deprived of either a life, liberty, or property interest protected by the due process clause." *McManus,* 530 F.Supp.2d at 72 (internal quotations and citation omitted).

### 1. Property Interest

Smith interchangeably alleges deprivations of both her property and liberty interests. (*See* 2d Am. Compl. at 2–3, 25–26.) Those claims that pertain to Smith's continued service in the military and the benefits associated with her employment are appropriately treated as property interests. *See Wilhelm v. Caldera,* 90 F.Supp.2d 3, 8–9 (D.D.C.2000) (citing *Guerra v. Scruggs,* 942 F.2d 270 (4th Cir. 1991)). Smith argues that flags, like the one placed on her personnel file, unconstitutionally "cause great harm and deprivation ... as they affect a soldier's ability to stay in the military via reenlistment, to keep health care plans, and to be promoted...." (*Id.*) The Secretary asserts that this due process claim should be dismissed because she has failed to demonstrate that she has a constitutionally-protected property interest in continued military service. (*See* Mot. to Dismiss at 23.)

 The Fifth Amendment provides that "[n]o person shall ... be deprived of ... property, without due process of law." U.S. Const. amend. V. While a governmental benefit may constitute a protected property interest, *see, e.g.,* *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Mathews,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), not every governmental benefit enjoyed by an individual represents an interest protected by the Constitution's Due Process Clause. *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). To have a constitutional interest in a governmental benefit, "a person must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must instead have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "A person's interest in a benefit is a 'property' interest for due process purposes if there are ... rules or mutually explicit understandings that support his claim of entitlement to the benefit...." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). These entitlements are created by sources independent of the constitution. *Castle Rock,* 545 U.S. at 756, 125 S.Ct. 2796.

 Smith has suffered no violation of her right not to be deprived of property without due process because there is no constitutionally-protected property interest in continued military service or the employment benefits that come with military service. *See Wilhelm v. Caldera,* 90 F.Supp.2d 3, 8–9 (D.D.C.2000) (citing *Guerra v. Scruggs,* 942 F.2d 270 (4th Cir. 1991)) (holding that "denials of re-enlistment as well as discharges prior to the expiration of a term of service" did not violate due process because "there is no protected property interest in continued military service"); *see also Knehans v. Alexander,* 566 F.2d 312, 314 (D.C.Cir. 1977) (finding that there is "no constitutionally protected entitlement to continued active duty as a commissioned officer in

the Army"). Further, Smith has not identified any statute, contract, or other independent source of law that entitles her to the property interests she identifies. As such, Smith has failed to allege a constitutionally-protected property interest in the benefits that derive from continued military service.

### 2. Liberty Interest

■■■■■ By alleging that the flag placed on her personnel file had a stigmatizing effect and constituted "harassment, pure and simple" (see 2d Am. Compl. at 3, 29–31), Smith also appears to allege a constitutionally-protected liberty interest in her reputation and good name. *See Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) ("The Due Process Clause ... forbids arbitrary deprivations of liberty. 'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the Clause must be satisfied." (citing *Roth,* 408 U.S. at 573, 92 S.Ct. 2701)). "A due process liberty interest is implicated where the government negatively alters the employment status of a government employee or impugns h[er] reputation so as to either (1) seriously damage h[er] standing and associations in h[er] community ("reputation-plus"), or (2) foreclose h[er] freedom to take advantage of other employment opportunities by either (a) automatically excluding h[er] from a definite range of employment opportunities with the government or (b) broadly precluding h[er] from continuing h[er] chosen career ("stigma or disability")." *M.K. v. Tenet,* 196 F.Supp.2d 8, 15 (D.D.C.2001) (citing *O'Donnell v. Barry,* 148 F.3d 1126, 1140–42 (D.C.Cir.1998)). "Under either theory, a threshold question is whether an adverse employment action actually took place." *Evans v. Dist. of Columbia,* 391 F.Supp.2d 160, 167 (D.D.C.2005).

■■■■■ Although placement of a flag on Smith's personnel file prevents her from receiving any *favorable* employment action such as a promotion, transfer, or awards while the elimination action is pending (*see* Mot. to Dismiss at 4 n. 2), the flag does not constitute an adverse employment action. As explained by the D.C. Circuit, for a plaintiff to sufficiently claim a constitutionally-protected liberty interest, she must allege a "discharge from government employment or at least a demotion in rank and pay." *O'Donnell,* 148 F.3d at 1140. In other words, Smith "must show that the government action has the effect of 'seriously affect[ing], if not destroy[ing], a plaintiff's ability to pursue h[er] chosen profession,' or 'substantially reduc[ing] the value of h[er] human capital." *Winder v. Erste,* 511 F.Supp.2d 160, 182 (D.D.C.2007) (citing *O'Donnell,* 148 F.3d at 1141 (internal quotations omitted)). Smith has not been discharged from employment or demoted, and she has failed to allege a constitutionally-protected liberty interest. *See Evans,* 391 F.Supp.2d at 168 (citing *O'Donnell,* 148 F.3d at 1140).

### 3. Vagueness Claim

■■■■■ Smith additionally insists that the term "misconduct" in the statute pertaining to reserve officer separations, 10 U.S.C. § 14902, is unconstitutionally vague. (*See* 2d Am. Compl. at 13, 18.) To decide if a regulation is too vague, the court "must assess whether it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Barnes,* 295 F.3d 1354, 1366 (D.C.Cir.2002) (internal quotations and citation omitted). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 41

L.Ed.2d 439 (1974). "[Vagueness] challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *See United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).

 Smith's conduct allegedly included, but was not limited to, failure to follow orders, threatening supervisors and superior officers at her place of duty, and lying to obtain unauthorized access to classified materials. (*See* Am. Compl., Ex. J.) Smith argues that because she did not engage in any of the examples of misconduct noted by the Secretary in his definition cited in the motion to dismiss [7]—alcohol and drug abuse, criminal misconduct, and civil confinement—the prohibition against misconduct could not have been reasonably viewed as applying to her activity. (*See* Opp'n at 6.) The fact that her conduct did not conform with the specific examples the Secretary cited, however, carries little weight because "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. Quinn*, 401 F.Supp.2d 80, 100 (D.D.C.2005) (citing *United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963)). To be sure, it would be a reach even to call Smith's alleged conduct "marginal." *See Parker*, 417 U.S. at 744, 94 S.Ct. 2547 ("No question can be left open as to . . . the duty of obedience in the soldier." (internal quotations and citation omitted)). While the Supreme Court has held that generally penalizing " 'some misconduct' . . . . falls short of the kind of legal standard due process requires[,]" see *Giaccio v. Pennsylvania*, 382 U.S. 399, 404, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966), it has also insisted that "Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules" applying to the military. *See Parker*, 417 U.S. at 756, 94 S.Ct. 2547. Thus, regardless of how viable Smith's vagueness claim may have been in a hypothetical civilian context, "within the military community there is simply not the same autonomy as there is in the larger civilian community." *Id.* at 751, 94 S.Ct.

7. The Secretary states that "Army Reg. 135–175 does not define the term 'misconduct.' However, the active duty counterpart regulation, Army Reg. 600–8–24, contains the same list of conduct that qualifies for involuntary separation of active duty officers." (Mot. to Dismiss at 3 n. 1.) Army Regulation 600–8–24 defines misconduct as follows:

> Conduct within the control of the officer concerned, which includes but is not limited to drug abuse, alcohol abuse, criminal conduct, and civil confinement and results in either of the following:
> a. Tends to bring the officer or the Army into disrepute; or
> b. Results in the loss or abandonment of or suspension from professional status when lack of status adversely affects the member's ability to perform duties; or
> c. Includes but is not limited to drug abuse, alcohol abuse, criminal conduct, and civil confinement.

Army Reg. 600–8–24, § II, Terms.

Despite the Secretary's assertion, it is not clear that how a reserve officer would know to look to the "counterpart regulation" of Army Reg. 135–175 to find a definition of misconduct. Although Army Regulation 135–175 ("Army National Guard and Army Reserve—Separation of Officers") does not provide a lengthy definition of the term misconduct, it states as follows:

> While not all-inclusive, existence of one of the following or similar conditions . . . authorizes involuntary separation of an officer due to moral or professional dereliction:
> f. Acts of personal misconduct (including, but not limited to, acts committed while in a drunken or drug-intoxicated state).

Army Reg. 135–175, Ch. 2–12, Moral or professional dereliction. "Moral or professional dereliction," in turn, is defined as "[c]onduct within the control of the individual concerned, which tends to bring the individual or the Army into disrepute." *Id.*, Glossary § II.

**18**

2547. Because Smith "could have no reasonable doubt" that her alleged actions constituted "misconduct" under 10 U.S.C. § 14902, she is precluded from bringing void-for-vagueness challenge.[8] *See id.* at 757, 94 S.Ct. 2547.

### B. *Sixth Amendment Claim*

 Smith argues that because the separation board "gets its legitimacy from Article 36" of the Uniform Code of Military Justice, and Article 36 courts of inquiry handle criminal prosecutions, she is essentially facing a criminal prosecution which is violative of her Sixth Amendment rights. (See Opp'n at 14.) However, while plaintiff insists that a separation board of inquiry proceeding "looks like an Article 36 court of inquiry [and] operates like an Article 36 court of inquiry" (2d Am. Compl. at 17), the fact remains that the authority for involuntary separation proceedings comes from 10 U.S.C. §§ 14902–03, not Article 36, and such proceedings are administrative in nature. Because a reserve officer's involuntary separation proceeding does not constitute a criminal prosecution under Article 36, the Sixth Amendment is inapplicable.

Smith has stated no constitutional claims, and they will be dismissed.

### CONCLUSION

Smith's APA claim is not ripe for judicial review, and her Fifth and Sixth Amendment claims do not state a cause of action. Thus, the Secretary's motion to dismiss will be granted.

**8.** Smith insists that the Army has "lie[d] to fabricate a 'pattern of misconduct' that has little to do with [her] record." (2d Am. Compl. at 12.) Finding that Smith's alleged conduct could reasonably be expected to be within the definition of "misconduct" is not a factual determination that such misconduct actually

A final, appealable Order accompanies this Memorandum Opinion.

occurred. *See Ricks v. United States,* 414 F.2d 1111, 1118 (D.C.Cir.1968) ("[I]n determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is *charged.*" (citation omitted) (emphasis added)).