RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0007p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

WILLIAM G. BOLTON,

               *Plaintiff-Appellant*,

    *v.*

DEPARTMENT OF THE NAVY BOARD FOR CORRECTION
OF NAVAL RECORDS,

               *Defendant-Appellee*.

No. 18-3284

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:16-cv-02953—Benita Y. Pearson, District Judge.

Decided and Filed:  January 18, 2019

Before:  COLE, Chief Judge; SUHRHEINRICH and MOORE, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:**  Thomas F. Hull, II, MANCHESTER NEWMAN & BENNETT, Youngstown, Ohio, for Appellant.  Ruchi V. Asher, James R. Bennett, II, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

───────────────

## OPINION

───────────────

SUHRHEINRICH, Circuit Judge.

Plaintiff William G. Bolton petitioned Defendant Department of the Navy Board for Correction of Naval Records (BCNR) to expunge the summary-court martial from his military record based on his guilty plea to three military charges related to his arrest for driving while

drunk on the Marine Corps Base Camp Lejeune, North Carolina.  The BCNR held that it lacked the statutory authority to set aside the findings of a summary court-martial.  Bolton challenged the BCNR's ruling in federal court.  The district court granted the BCNR's motion to dismiss Bolton's amended complaint and he appealed to this court.  We AFFIRM.

## I.  Background

## A.  Military Justice

The Uniform Code of Military Justice (UCMJ) has four methods for addressing offenses by servicemen: general courts-martial, UCMJ art. 18, 10 U.S.C. § 818; special courts-martial, UCMJ art. 19, 10 U.S.C. § 819; summary courts-martial, UCMJ art. 20, 10 U.S.C. § 820, and non-judicial punishment, UCMJ art. 15, 10 U.S.C. § 815.  *See Middendorf v. Henry*, 425 U.S. 25, 31 (1976).  *Middendorf* explains that

> General and special courts-martial resemble judicial proceedings, nearly always presided over by lawyer judges with lawyer counsel for both the prosecution and the defense. General courts-martial are authorized to award any lawful sentence, including death. Art. 18 UCMJ, 10 U.S.C. [§] 818. Special courts-martial may award a bad-conduct discharge, up to six months' confinement at hard labor, forfeiture of two-thirds pay per month for six months, and in the case of an enlisted member, reduction to the lowest pay grade, Art. 19, UCMJ, 10 U.S.C. [§] 819.

*Id.* (footnote omitted).

By contrast, a nonjudicial punishment is less serious than a summary court-martial.  *See Manual for Courts-Martial*, *United States* [MCM] pt. V, para. 1.c. ("Nonjudicial punishment provides commanders with an essential and prompt means of maintaining good order and discipline and also promotes positive behavior changes in servicemembers without the stigma of court-martial conviction."); UCMJ art. 15, 10 U.S.C. § 815.  "Article 15 punishment, conducted personally by the accused's commanding officer, is an administrative method of dealing with the most minor offenses."  *Middendorf*, 425 U.S. at 31–32.  Summary court-martial is somewhere in between.  As *Middendorf* clarifies:

> The summary court-martial occupies a position between informal nonjudicial disposition under Art. 15 and the courtroom-type procedure of the general and

> special courts-martial. Its purpose, "is to exercise justice promptly for relatively minor offenses under a simple form of procedure." Manual for Courts-Martial P 79A (1969) (MCM). It is an informal proceeding conducted by a single commissioned officer with jurisdiction only over noncommissioned officers and other enlisted personnel. Art. 20, UCMJ, 10 U.S.C. [§] 820. The presiding officer acts as judge, factfinder, prosecutor, and defense counsel. The presiding officer must inform the accused of the charges and the name of the accuser and call all witnesses whom he or the accused desires to call. M P 79D (1). The accused must consent to trial by summary court-martial; if he does not do so trial may be ordered by special or general court-martial, or the case will be either dismissed or referred to a special or general court-martial.
>
> The maximum sentence elements which may be imposed by summary courts-martial are: one month's confinement at hard labor; 45 days' hard labor without confinement; two months' restriction to specified limits; reduction to the lowest enlisted pay grade; and forfeiture of two-thirds pay for one month. Art. 20, UCMJ, 10 U.S.C. [§] 820.

*Id*. at 32-33 (footnote omitted); *see also* Rule For Courts-Martial (RCM) 1301(b) ("*Function. The function of the summary court-martial is to promptly adjudicate minor offenses under a simple procedure. The summary court-martial shall thoroughly and impartially inquire into both sides of the matter and shall ensure that the interests of both the Government and the accused are safeguarded and that justice is done.*").

## B. Facts and Procedural History

The following facts are taken from the amended complaint and attached exhibits, accepted as true for purposes of appeal. Bolton entered the Marine Corps on August 22, 2006. On August 6, 2010, he was arrested for speeding and driving under the influence on the base camp. Bolton was issued a U.S. District Court Violation Notice, a DD Form 1805, for driving while intoxicated, and an Armed Forces Traffic Ticket, a DD Form 1408, for speeding and driving while intoxicated.[1] Bolton was ticketed as driving eighty-two miles per hour in a fifty-mile per hour speed zone, with a blood alcohol content of 0.24. Bolton signed both tickets and acknowledged that he was required to appear before an on-base traffic court on August 13, 2010, as directed on the ticket.

---

[1]The DD Form 1805 refers violations to the magistrate judge, and the DD Form 1408 refers traffic violations for administrative resolution under the base commander's authority. Marine Corps Order [MCO] 5110.1D para. 4-9 (22 May 2006).

Bolton was also informed that he would face court-martial under the following articles of the Uniform Code of Military Justice: (1) Article 89 (Disrespect of a Commissioned Officer); (2) Article 92 (Unregistered Firearm on Base); and (3) Article 111 (Driving Under the Influence). These charges were initially brought as a criminal prosecution pursuant to a special court-martial, but Bolton entered into a pre-trial agreement to resolve them by accepting a non-criminal summary court-martial,[2] based on advice by military defense counsel that all charges, including those assigned to the federal court, would be disposed of by the court-martial. He was not informed that his citation would still be heard by the base court.

As a result of this advice, Bolton did not appear at the base traffic court on August 13, 2010. He was convicted of driving under the influence, a violation of North Carolina General Statutes Section 20-138.1, and his on-base driving privileges were suspended. As a further result of the base court conviction, Bolton's driver's license was also administratively suspended effective November 4, 2010, by the state of North Carolina for a period of one year. The state of Ohio followed suit on November 24, 2010, but later removed the suspension.

Bolton's plea agreement was accepted on August 21, 2010. On August 30, 2010, Bolton pleaded guilty to all three military charges at the summary court-martial. As a consequence, he received a reduction in rank (by three pay grades), a forfeiture of $964, and fourteen days restricted confinement to the 3d Battalion, 2d Marine Regiment.

On October 1, 2010, Bolton completed his active duty service obligation and was honorably discharged. His discharge lists a reenlistment code of RE-1A, meaning that he was eligible to reenlist.

In 2015, Bolton filed a petition with the BCNR to have the summary court-martial expunged from his military record, claiming that he received inadequate legal counsel and was subject to multiple prosecutions for the same incident through the summary court-martial and the civilian courts. On September 21, 2016, the BCNR held that it did not have the statutory

---

[2]Bolton struck a bargain with the military: withdrawal of charges at a special court-martial (with up to one year of confinement, a punitive bad conduct discharge, forfeiture of 2/3 pay for one year, and reduction to paygrade E-1, RCM 201(f)(2)(B)(i)), for non-criminal sanctions (fourteen days' confinement, a reduction in rank and a forfeiture of $964, *see* RCM 1301(d)), at a summary court-martial.

authority to set aside the findings of a summary court-martial. The BCNR also *sua sponte* reviewed the application for clemency, and based on "its review of [the] entire record and application, . . . [including the] assertions of inadequate legal counsel in [the] court-martial case," concluded that "the circumstances and serious nature of your misconduct did not warrant clemency in the form of changing the sentence awarded by the summary court-martial."

On December 8, 2016, Bolton filed a complaint in federal district court, and amended it on April 17, 2017. Bolton alleged that the BCNR's decision was arbitrary and capricious under 10 U.S.C. § 1558(f)(3) because: (1) it failed to consider his defenses of double jeopardy and ineffective assistance of counsel; and (2) lacked a complete record. Bolton also complained that he was not given the chance to address the evidence used against him. He asked the district court to expunge his court-martial and restore his rank to Corporal.

The district court dismissed the amended complaint on January 29, 2018. The court held that (1) Bolton did not state a claim for double jeopardy because neither the summary court-martial nor the base court conviction constituted a "criminal punishment" to which jeopardy attached; and (2) the BCNR did not have authority to grant Bolton's requested relief. In a footnote, the court observed that BCNR considered Bolton's petition as an application for clemency and denied it "with explanation." Bolton appeals.

## II. Jurisdiction

Bolton sought judicial review of BCNR's decision under 10 U.S.C. § 1558(f). Venue was proper under 28 U.S.C. § 1402 because Bolton resides within the territorial jurisdiction of the court. The district court granted the BCNR's motion to dismiss and entered judgment on January 29, 2018. Bolton filed this timely notice of appeal on March 29, 2018. We have appellate jurisdiction under 28 U.S.C. § 1291.

## III. Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  We "consider[ ] the complaint in its entirety," including "documents incorporated into the complaint by reference." *Solo v. United Parcel Serv. Co*., 819 F.3d 788, 794 (6th Cir. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007)).  Our review is de novo.  *Stein v. hhgregg, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017).

Federal courts have the authority to review the decision of a military board of correction under the Administrative Procedure Act (APA).  5 U.S.C. § 701 *et seq.*; *Piersall v. Winter*, 435 F.3d 319, 323-25 (D.C. Cir. 2006).  Decisions of the BCNR are "subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *see also* 5 U.S.C. § 706(2)(A),(E) (requiring the reviewing court to "set aside agency action . . . found to be" "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence . . . ."); *and* 10 U.S.C.  § 1558(f)(3)(A) (authorizing a court to set aside an action of the Secretary of any military department "only if the court finds that the recommendation or action was— (A) arbitrary or capricious; (B) not based on substantial evidence; (C) a result of material error of fact or material administrative error; or (D) otherwise contrary to law").  Notwithstanding, our review involves "an unusually deferential application of the 'arbitrary or capricious' standard" of the APA, *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir.1989), because

> [t]he statutory provisions at issue here draw a . . . distinction between the objective existence of certain conditions and the Secretary's determination that such conditions are present. The Secretary, acting through the Board, "may correct any military record of that department *when he considers it necessary* to correct an error or remove an injustice," 10 U.S.C. § 1552(a) (emphasis added), not simply when such action *is* necessary to correct an error or to remove an injustice.

*Id*. at 1513; *see also id.* at 1514 ("While the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination.").  This extra-deferential standard "is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied" with military action against him, "a result that would destabilize military command and take the judiciary far afield of its area of competence."  *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000); *see also Orloff v.*

*Willoughby,* 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.")

Although a correction board's decision to act is uniquely discretionary, it is still required to explain how it reached its decision. *Kreis*, 866 F.2d at 1514. When the BCNR denies a petition to correct a record, it must provide a "brief statement of the grounds for denial," which must include "the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory, and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based." 32 C.F.R. § 723.3(e). But "[a]ll that is required is that the [BCNR's] decision minimally contain a rational connection between the facts found and the choice made." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (internal quotation marks and citations omitted).

## IV. Analysis

### A. Statutory Authority

First, Bolton objects to the district court's conclusion that the BCNR lacks authority to correct an unjust court-martial. The BCNR's statutory authority is found in 10 U.S.C. § 1552. That section authorizes the Secretary of any military department, acting through a board, to "correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Bolton claims this authority includes the ability to expunge an invalid court-martial like his, citing *Baxter v. Claytor*, 652 F.2d 181, 185 (D.C. Cir. 1981) (holding that the BCNR had statutory authority to review a petitioner's collateral attack on his court-martial conviction on constitutional grounds), and *Owings v. Secretary of United States Air Force*, 447 F.2d 1245, 1249-50 (D.C. Cir. 1971) (holding that even if the plaintiff-serviceman could make a collateral attack in a civil court of his court martial, review was limited to constitutional defects and none were presented), in support. However, both cases predate Congress's amendment of 10 U.S.C. § 1552 in 1983 with the addition of subsection (f), which limits the Secretary's power to correct "records of court-martial," and only in two circumstances: (1) "to reflect actions taken" by other military

"reviewing authorities" or (2) as "action on the sentence of a court-martial for purposes of clemency." 10 U.S.C. § 1552(f).[3]

The language of § 1552(f) mirrors Congress's desire to prevent military corrections boards from setting aside court-martials:

> The bill adjusts the authority of the administrative boards established pursuant to 10 U.S.C. § 1552 (Boards for the Correction of Military/Naval Records) and § 1553 (Discharge Review Boards). In view of the military justice appellate system these administrative bodies should not render legal judgments on the results of courts-martial by overturning, as a matter of law, findings or sentences of courts-martial. This task is the job of the appellate review system established by the UCMJ. Therefore, the bill limits the authority of these Boards, in reviewing courts-martial in the future, to acting on courts-martial sentences as a matter of clemency after exhaustion of remedies under the UCMJ.

S. Rep. No. 98-53, at 11 (1983). Congress wanted to make "it clear that the appellate procedures under the UCMJ provide the sole forum under title 10, United States Code, for a legal review of the legality of courts-martial." *Id.* at 36. Thus, the purpose of sub-section (f) was to limit the role of the BCNR, which "primarily involves a determination as to whether the sentences should be reduced as a matter of command prerogative (*e.g.*, as a matter of clemency) rather than a formal appellate review." H.R. Rep. No. 98-549, at 15; *see also id.* at 20 ("In court-martial review the functions of the [BCNR] would be primarily limited to clemency actions.") To that end, the UCMJ sets forth exhaustive post-trial, appellate procedures to address legal challenges to courts-martial. *See generally* UCMJ arts. 59-76b, 10 U.S.C. §§ 859-876b.

Numerous courts have abided by this clear statutory directive. *See, e.g., Cossio v. Donley*, 527 F. App'x 932, 935 (Fed. Cir. 2013) (per curiam) ("Just as the Board may not overturn a conviction, it likewise has no authority to amend sentencing judgments other than

---

[3]The statute provides:

With respect to records of courts-martial and related administrative records pertaining to court-martial cases tried or reviewed under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)), action under subsection (a) may extend only to—

(1) correction of a record to reflect actions taken by reviewing authorities under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)); or

(2) action on the sentence of a court-martial for purposes of clemency.

10 U.S.C. § 1552(f).

through a grant of clemency.") (citing § 1552(f)); *Kendall v. Army Bd. for Corr. of Military Records*, 996 F.2d 362, 364 & n.2 (D.C. Cir. 1993) (noting that Army Board of Corrections for Military Records "properly decided that it lacked jurisdiction" where the issue was limited to setting aside the conviction or deleting the record); *Martinez v. United States*, 914 F.2d 1486, 1488 (Fed. Cir. 1990) (holding that the Army Board for the Correction of Military Records "has no authority to void court-martial convictions" under § 1552(f)); *Cooper v. Marsh*, 807 F.2d 988, 991 (Fed. Cir. 1986) (explaining that, before the 1983 amendment, the Army Board of Military Records lacked authority to overturn a court-martial conviction, and after the amendment is limited to extent to which it can correct a court-martial record); *Cothran v. Dalton*, 83 F. Supp. 2d 58, 65 (D.D.C. 1999) (holding that § 1552 could not provide plaintiff with relief "since he [was] not asking for clemency and ha[d] not obtained reversal of his conviction through military channels").

Thus, Bolton's reliance on *Baxter* and *Owings* is unavailing. The *Cooper* decision makes this clear. There the Federal Circuit Court of Appeals acknowledged that, prior to 1983, military record correction boards "could, if it considered it necessary to correct an error or remove an injustice, completely expunge all reference to a court-martial ever having occurred." *Cooper*, 807 F.2d at 991: "Before the amendment [the Army Board of Corrections for Military Records] lacked the power to overturn a court-martial conviction . . . . After the amendment, it still lacks that power and is now limited in the extent to which it can correct a court-martial record. *Id.* (citing *Baxter*, 652 F.2d at 184-85).

Bolton argues that *United States v. Stoltz*, 720 F.3d 1127 (9th Cir. 2013), and *Cooper v. United States*, 285 F. Supp. 3d 210 (D.D.C 2018), support his reading of § 1552. *Stoltz* held that double jeopardy did not bar a civilian criminal prosecution of a servicemember after he received a nonjudicial punishment, reversing the district court's dismissal of the indictment. *Stoltz*, 720 F.3d at 1131-32. *Stoltz* remarked that if the servicemember suffered a constitutional violation during the nonjudicial punishment proceedings the proper remedy would be to vacate the nonjudicial punishment, *id.* at 1132-33 and suggested that the Board for Correction of Military Records has the authority to "correct his military record if it determines that imposition of [nonjudicial punishment] on [the defendant] was improper," *id.* at 1133 (citing § 1552(a)(1)).

In *Cooper*, the petitioner alleged that he received inadequate counsel before he elected the nonjudicial punishment and waived his right to court-martial. *Cooper*, 285 F. Supp. 3d at 215. The district court held that the BCNR's refusal to remove a nonjudicial punishment was arbitrary because the BCNR failed to provide an adequate explanation of its rationale and remanded for further consideration. *Id.* at 216. The cases involve nonjudicial punishments, not court-martials. Because Bolton requested relief the BCNR cannot grant—expungement of the record of his summary court-martial, the district court correctly held that Bolton failed to state a claim.

### B. APA Claim

Bolton attacks the BCNR decision as arbitrary and capricious. First, he claims that the summary court-martial was substantively unfair resulting in manifest injustice because he was (1) punished twice for the same infraction, and (2) unfairly induced to take a plea that forever bars him from reenlisting. Second, he alleges that the BCNR's decision was procedurally unreasonable because the BCNR (1) did not review a complete record, and (2) did not give him an opportunity to address the evidence it relied upon.

### 1.

Bolton argues that he was unfairly punished twice—both by the summary court-martial as well as a base court conviction (which led to a suspension of driving privileges in North Carolina as well). But the Double Jeopardy Clause "protects only against the imposition of multiple criminal punishments for the same offense," *Herbert v. Billy*, 160 F.3d 1131, 1136 (6th Cir. 1998) (internal quotation marks and citations omitted); *see also Hudson v. United States*, 522 U.S. 93, 98-99 (1997) (holding that Double Jeopardy Clause precludes only successive criminal punishments, but "does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment") (internal quotation marks omitted), and Bolton's summary court-martial is not a criminal prosecution, *see Middendorf*, 425 U.S. 25, 34 (1976) (holding that "the summary court-martial provided for in these cases was not a 'criminal prosecution' within the meaning of" the Sixth Amendment); *United States v. Reveles*, 660 F.3d 1138, 1146 (9th Cir. 2011) (holding that just as a summary courts-martial does not rise to the level of criminal proceedings per *Middendorf*, a nonjudicial proceeding, which is an

administrative way of dealing with the most minor offenses, cannot be characterized as criminal).[4]

Bolton's base traffic court driving suspension is also not a criminal punishment as a matter of law. Marine Corps regulations authorize commanding officers or their designees to immediately suspend on-base driving privileges when a service member is suspected of driving under the influence on a military installation. MCO § 5110.1D, paras 2-4, 2-6c. The base traffic officer and base traffic court do not have authority to impose criminal punishment; their authority is limited to administratively suspending or revoking on-base driving privileges. MCO 5110.1D para. 2-6. Furthermore, once a member's on-base driving privileges are suspended or revoked, the state agency that issued the member's license and the North Carolina authorities must be notified. MCO 5110.1D para. 2-11.c.(2). Because Bolton was issued a DD Form 1408, he was required to appear before the base traffic officer or have his on-base driving privileges revoked. Camp Lejeune Base Order P5560.2M (Base Order) p.6-1 para. 2, p. 6-4 para. 5(a)(1). Bolton's DD Form 1408 listed the date and location to appear before the base traffic officer. Bolton signed his acknowledgement. Indeed, this court has rejected the claim that an administrative driving suspension is the primary evil that the Double Jeopardy Clause was designed to protect. *See Herbert*, 160 F.3d at 1137-39 (rejecting argument that administrative license suspensions issued to individuals arrested for drunk driving prior to criminal prosecution violated Fifth Amendment Double Jeopardy Clause because administrative license suspensions were "remedial, not punitive, in nature"); *Allen v. Attorney Gen. of State of Me.,* 80 F.3d 569, 577 (1st Cir. 1996) (holding that criminal prosecution after an administrative suspension of license for driving under the influence did not violate double jeopardy). Instead, administrative suspensions are intended to promote public safety by removing drivers who drive under the influence. *United States v. Imngren*, 98 F.3d 811, 816 (4th Cir. 1996). In fact, the Fourth Circuit held that prosecution for driving under the influence on a military reservation following suspension of driving privileges did not violate double jeopardy. *Id.* at 817 (reversing the district court's dismissal of federal criminal charges on the grounds that the previous suspension of the

---

[4]It is well-established that double jeopardy bars a subsequent civilian criminal prosecution for the same offense after a general or special court-martial. *See United States v. Stoltz*, 720 F.3d 1127, 1128-29 (9th Cir. 2013) (citation omitted). Double jeopardy does not preclude civilian prosecution after a nonjudicial punishment. *Id.*

defendants' driving privileges pursuant to army regulations constituted a prior punishment under the Double Jeopardy Clause). In short, Bolton's driving suspensions were an administrative measure because the base traffic court did not have the authority to convict Bolton criminally, and the double jeopardy clause was not triggered.**[5]**

**2.**

Next Bolton claims that he was "induced" to take a deal, which resulted in a de facto ban against re-enlistment, and that he was inadequately advised regarding his ability to re-enlist. There are several problems with this argument. First, Bolton did not raise the alleged bar against re-enlistment in his application before the BCNR. He has therefore waived this issue for review. *Wilson Air. Ctr., LLC v. F.A.A.*, 372 F.3d 807, 813 (6th Cir. 2004) ("The administrative waiver doctrine, commonly referred to as issue exhaustion, provides that it is inappropriate for courts reviewing agency decisions to consider arguments not raised before the administrative agency involved."); *Kendall*, 996 F.2d at 366 ("Indeed, the military justice system is sufficiently analogous to state justice systems to apply identical waiver rules to bar claims raised for the first time during a collateral attack on a court-martial."). More important, Bolton would have to pursue any ineffective assistance claim through the UCMJ appellate and post-conviction review procedures, not before the BCNR.**[6]** *See United States v. Martinez*, 914 F.2d 1486, 1488 (Fed. Cir. 1990) (failure to raise constitutional claim in the military court system barred serviceman from raising it in federal court absent a showing of cause and prejudice); *Kendall*, 996 F.2d at

---

**[5]**Finally, Bolton's reliance on *United States v. Crank* is misplaced. There the defendants were prosecuted in federal court after waiving their right to court-martial in favor of nonjudicial punishment. Absent the waiver, double jeopardy would have limited punishment to either the military justice system through a court-martial or a civilian federal court, but not both. *United States v. Crank*, Nos. 1:11-cr-222, 1:11-cr-223, 1:11-cr-224, 1:11-cr-225, 1:11-cr-226, 2012 WL 913626, at *1 (E.D. Va. Mar. 16, 2012). The district court held that the defendants' waiver had not been voluntary because they effectively had no access to any lawyer and were not made aware of the consequences of their court-martial waivers, *id*. at * 6-7, and dismissed the charges under its broad equitable powers, *id*. at *8. Here, unlike *Crank*, Bolton was never prosecuted in federal court.

**[6]**As the BCNR explains in its brief, every summary court-martial is reviewed initially by a judge advocate. RCM 1112(a)(3) ("under regulations of the Secretary concerned, a judge advocate shall review: . . . (3) [e]ach summary court-martial"); UCMJ art. 64, 10 U.S.C. § 864. The judge advocate must explain, in writing, whether the court-martial had jurisdiction over the accused, whether the charge stated an offense, and whether the sentence was legal. RCM 1112(d). The judge advocate must address all assignments of error by the accused and make a recommendation to the convening officer. RCM 1112(d); 10 U.S.C. § 864(a). After this review is completed, a summary court-martial can be challenged under article 69(b) of the UCMJ within two years. *See* UCMJ art. 69(b), 10 U.S.C. § 869(b); *see also* RCM 1201(b)(3)(A).

366. This is so because the BCNR "has no authority to void court-martial convictions." *Martinez*, 914 F.2d at 1488; *see also* 10 U.S.C. § 1552(f). He never sought military review. Finally, we note that Bolton received an Honorable Discharge and nothing in his discharge records suggests that he is categorically barred from serving in the military.[7]

**3.**

Bolton contends that his sentence was procedurally flawed because "[t]he record upon which the [BCNR] issued its decision was incomplete and failed to include all relevant information in favor of [him]." He also contends that the BCNR failed to articulate a satisfactory explanation for its decision to deny him clemency.

Bolton complains that "[t]here is no evidence that [his] full service record was transmitted to the [BCNR]," which would have included a written commendation from his Battalion Commander for a Navy Commendation Medal (which he did not ultimately receive), as well as "the rest of Bolton's distinguished service record." The BCNR responds that it "is not an investigative body." 32 C.F.R. § 723.2(b). Rather, "the [BCNR] relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties." 32 C.F.R. § 723.3(e)(2). Instead, "[a]pplicants have the burden of overcoming this presumption." *Id*. Thus, the BCNR says that it was Bolton's burden to supply any relevant missing information.[8]

It is not clear to this court how Bolton would know whether the Department of the Navy transferred a complete file to the BCNR. In fact, the record sent indicates that it is a "redacted

---

[7]Bolton acknowledges that "the reduction in rank, combined with his age, is a de facto bar to reenlistment."

[8]Bolton relies on *Morrison v. Secretary of Defense*, 760 F. Supp. 2d 15 (D.D.C. 2011). There the district court denied the defendant's motion to dismiss the plaintiff's claim that the BCNR failed to consider his averments that his military career was exemplary. *Id.* at 20. It does not support the proposition that a correction board is required to consider an applicant's allegations of exemplary service when that argument has not been properly presented to the board. Indeed, it suggests the opposite. *See id.* (stating that "what matters is whether the BCNR considered evidence of that excellence, *if presented*, when deciding whether to change Plaintiff's records") (emphasis added).

copy of the administrative files." **9** Nonetheless, Bolton did not request clemency in his petition. Bolton's brief in support of correcting the military record asked the BCNR to remove "a Summary Court Martial for violations of UCMJ, Arts 89, 92, and 111 . . . because he was inadequately informed of his legal rights and consequences of the plea agreement," which resulted in double punishment. Bolton's failure to make this argument before the BCNR means that it is waived. *See Wilson Air. Ctr.*, 372 F.3d at 813; *Kendall*, 996 F.2d at 366.

The BCNR considered clemency *sua sponte*. In "determin[ing] that the circumstances and serious nature of [Bolton's] misconduct did not warrant clemency in the form of changing the sentence awarded by the summary court-martial," the BCNR focused on a similar prior incident in August 2007, when Bolton was counseled about his underage drinking and lack of judgment, and his failure to reform. The BCNR noted that at that time Bolton was "provided recommended corrective action, advised of available assistance, and warned of the consequence of further deficiencies." The BCNR then observed that Bolton's civil conviction and the incident that led to the summary court-martial in 2010 was for reckless driving while intoxicated. Thus, the BCNR provided an adequate explanation for its decision to deny clemency based on factors it deemed most relevant. We cannot say that this decision was arbitrary or capricious. *See* 10 U.S.C. § 1552(a)(1) (stating that a military record be corrected "*when the Secretary considers it necessary* to correct an error or remove an injustice") (emphasis added).

Although the BCNR did not expressly mention "the rest of Bolton's distinguished service record," the military record provided to the BCNR included a list of Bolton's "Decorations Medals, Badges Citations and Campaign Ribbons Awarded or Authorized" in his certificate of release from active duty. And, at the outset of its decision the BCNR stated that it "considered . . . [Bolton's] application, together with all material submitted in support thereof, [*Bolton's*] *naval record*, and applicable statutes, regulations, and policies." Thus, Bolton has not demonstrated that the record before the BCNR was inadequate. Furthermore, the BCNR notified

---

**9**Bolton points out that the instruction on the application to the BCNR leads applicants to believe that their full-service records are reviewed, because instruction number six states in pertinent part that "[a]ll evidence not already included in your record must be submitted by you." (*See* R. 16-3, ID# 212).

Bolton that it would reconsider its decision if he submitted new and material evidence within one year of its decision. He did not take that opportunity. Thus, his lament lacks merit.

**4.**

Bolton also complains that he was denied an opportunity present additional evidence at an oral hearing, namely evidence of a diagnosed sleep disorder that apparently caused Bolton to be counseled for underage drinking in 2007. But an applicant does not have a right to an oral hearing; the BCNR has discretion to rule on a petition without one. *See* 32 C.F.R. § 723.3(e)(1). In any event, Bolton could have presented this evidence in writing to the BCNR. Again, Bolton's argument is unpersuasive.

**C. Denial of Clemency**

Bolton also argues that the BCNR's denial of his request for clemency was arbitrary and capricious. The BCNR responds that an agency action is not reviewable if it is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and clemency is traditionally understood as one of those decisions committed to executive discretion. *See Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 276 (1998) (plurality opinion) (reaffirming its view that pardon and commutation decisions are committed to the authority of the executive and not appropriate subjects for judicial review); *United States ex rel. Kaloudis v. Shaughnessy*, 180 F.2d 489, 491 (2d Cir. 1950) (clemency "is a matter of grace, over which courts have no review") (Learned Hand, J.); *United States v. Pollard*, 416 F.3d 48, 57 (D.C. Cir. 2005); *United States v. Tu*, 30 M.J. 587, 591 (A.C.M.R. 1990). Notwithstanding, as Bolton points out in his reply brief, although Congress has narrowed the scope of a correction board's ability to correct the record of a court-martial, it did not remove judicial review of such board's decisions more generally under the APA. *See Wilhelm v. U.S. Dep't of Navy Bd. for Corr. of Naval Records*, No. 2:15-CV-0276-TOR, 2016 WL 3149710, at * 3 (E.D. Wash. June 3, 2016). Moreover, "section 1552 empowers the [BCNR] to grant clemency pursuant to the same 'error' or 'injustice' standard as its other decisions." *Id.* (quoting 10 U.S.C. § 1552); *see also Penland v. Mabus*, 181 F. Supp. 3d 100 (D.D.C. 2016) (reviewing the BCNR's denial of clemency under the APA).

Bolton suggests that clemency was warranted based upon his double jeopardy and ineffective assistance of counsel claims, but he fails to identify any law or standard establishing that these bases rendered the BCNR's denial of clemency arbitrary or capricious under the APA. Even so, the BCNR *did* consider clemency (noting that it had the authority to reduce the sentence awarded as a matter of clemency), and "determined that the circumstances and serious nature of [Bolton's] misconduct did not warrant clemency in the form of changing the sentence awarded by the summary court-martial." Bolton has failed to show that this decision was irrational. The record reflects that he was charged with multiple offenses, including driving under the influence, disrespecting a commissioned officer, and possessing an unregistered firearm. He admits that he committed these infractions. Although he argues that the latter two charges "arose directly out of the DUI arrest," they constitute entirely different conduct. Even if similar conduct, double jeopardy is not a problem because Congress intended separate punishments for these offenses. *See White v. Howes*, 586 F.3d 1025, 1027, 1035 (6th Cir. 2009); *see also Helvering v. Mitchell*, 303 U.S. 391, 399 (1938) ("Congress may impose both a criminal and a civil sanction in respect to the same act or omission"). In short, the BCNR's decision was not arbitrary and capricious because it provided a rational connection between the facts and the denial of clemency. *See Frizelle*, 111 F.3d at 176.

Under the extra-deferential standard we are obliged to apply in matters military, so as "not to interfere with legitimate [Navy] matters," *Orloff*, 345 U.S. at 94, we reject Bolton's appeal of the BCNR's decision and affirm the decision of the district court.

## V.  Conclusion

The district court correctly held that Bolton failed to state a plausible claim for relief under Fed. R. Civ. P. 12(b)(6). **AFFIRMED**.