NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0177n.06

Case No. 25-5410

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Apr 17, 2026

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| RICHARD B. REITER, | ) | |
| Plaintiff - Appellant, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| v. | ) | |
| | ) | |
| DR. TROY E. MEINK, Secretary of the Air Force | ) | **O P I N I O N** |
| Defendant - Appellee. | ) | |

Before: CLAY, McKEAGUE, and NALBANDIAN, Circuit Judges.

McKEAGUE, Circuit Judge. Richard B. Reiter filed this lawsuit against the Secretary of the United States Air Force[1] after he was denied a promotion. Reiter claims the Air Force violated the Administrative Procedure Act when it rejected his attempts to correct a record in his personnel file, and then relied on this allegedly erroneous record to deny his promotion. The district court ruled for the Secretary. Seeing no error, we AFFIRM.

---

[1] Reiter originally filed this suit against Frank Kendall III in his official capacity as the Secretary of the Air Force. Both parties agree that Dr. Troy E. Meink, the current Secretary of the Air Force, is now the proper defendant. *See* Fed. R. Civ. P. 25(d).

## I. BACKGROUND

Reiter served in the Air Force from December 27, 1993, to August 31, 1998. He then joined the Air Force Reserves. In 2016, while serving as a Judge Advocate within the Air Force Judge Advocate General's Corps, Reiter was eligible for a potential promotion.

Per the Air Force's promotion process, Lieutenant General Stayce Harris served as Reiter's Senior Rater. In that capacity, Harris filled out a Promotion Recommendation Form ("Recommendation Form") for Reiter and submitted it to the Air Force Reserve Line and Nonline Colonel Promotion Selection Board ("Promotion Board"), the entity that would approve or reject Reiter's promotion.

Air Force regulations require a Senior Rater to provide the ratee a copy of the submitted Recommendation Form before the Promotion Board makes a decision. So when Reiter received a Recommendation Form in the mail (that bore what appeared to be Harris's signature) ranking him as the top candidate for promotion, he was expecting to hear good news. Instead, he soon learned that he was not selected for the promotion. He also learned that the Recommendation Form submitted to the Promotion Board was different than the one he received in the mail—it listed Reiter as the second choice for promotion rather than the first.

### A. First Attempt To Correct Recommendation Form

Reiter went to the Air Force Board for Correction of Military Records ("Correction Board") for a remedy. He requested the Air Force convene a Special Selection Board to reconsider his candidacy using the version of the Recommendation Form that he received (which listed him as the top candidate for promotion) rather than the version the Promotion Board received (which listed him as the second choice). The Correction Board sought an advisory opinion from the Air Reserve Personnel Center on how to proceed.

The advisory opinion recommended denying Reiter's request. The Promotion Board only received one version of the Recommendation Form—the version that listed Reiter as the second

choice. And Reiter did not provide any documentation establishing that the Recommendation Form he received in the mail was the correct version. The Correction Board forwarded Reiter the advisory opinion and gave him an opportunity to respond.

Reiter took issue with the advisory opinion in two ways. In a letter to the Correction Board, Reiter first argued that he should not have to shoulder the burden of providing evidence that the Recommendation Form his Senior Rater submitted was incorrect. To Reiter, the fact that he received a copy of a Promotion Form—with what appeared to be his Senior Rater's signature— should be sufficient to prove its validity. Second, Reiter argued that regardless of which Recommendation Form was correct, he was never provided a copy of the version that the Promotion Board actually considered—a violation of the Air Force's regulations that provide the candidate an opportunity to review the Promotion Form and address any perceived errors. *See* AFI 36-2504 §§ 1.6, 1.7 (Jan. 9, 2003), *amended by* AFI 36-2504 (Aug. 4, 2023).[2]

The Correction Board denied Reiter's request and adopted the advisory opinion's reasoning and recommendation. The Air Force's regulations instruct the Promotion Board to consider the Recommendation Form submitted by the Senior Rater, *id.*; *see also* Mar. 19, 2018 Corr. Bd. Op., R.19-1 at PageID 129 (explaining that the Promotion Board only accepts Recommendation Forms from Senior Raters), and Reiter did not provide evidence that Harris submitted the wrong version. However, the Correction Board gave Reiter an avenue for further reconsideration: "[s]hould [Reiter] provide documentation from his senior rater stating the incorrect [Recommendation Form] was submitted, [the Correction Board] may be willing to reconsider his request." Mar. 19, 2018 Corr. Bd. Op., R.19-1 at PageID 130.

---

[2] This citation refers to the Air Force regulations in effect at the time of Reiter's attempted promotion. The provisions detailing the process by which a Senior Rater submits a Recommendation Form have moved to sections 2.7 and 2.8 of the regulations. *See* AFI 36-2504 (Aug. 4, 2023).

## B. Second Attempt To Correct Recommendation Form

Reiter took the Correction Board's opinion to heart and filed another request for a Special Selection Board to reconsider his promotion, this time attaching multiple exhibits. One exhibit showed email exchanges between Air Force personnel. In one of the email exchanges, Colonel Jeffrey Van Dootingh—who worked closely with Reiter—reached out to Harris on Reiter's behalf. Van Dootingh sent Harris the conflicting Recommendation Forms and sought clarification as to which version she submitted to the Promotion Board. In response, Harris explained that she "was able to resolve right away that the correct [Recommendation Form] for [Reiter]" listed him as the second choice. Email Exchange, R.19-1 at PageID 151. Looking through her own files, Harris located the signed Recommendation Form listing Reiter as the second choice for promotion and the signed Recommendation Form listing a different candidate as her first choice. Harris also stated that she "ha[d] no idea how [Reiter] received what he shares is my signature on the [Recommendation Form] he states he received in the mail . . . distressing." *Id.* (ellipses in original, not used for an omission). Reiter argued that this email exchange did not prove which version of the Recommendation Form was correct, suggesting that Harris was merely communicating her inability to locate certain files without commenting on the validity of the version Reiter received. He also attached affidavits from Van Dootingh and Colonel Douglas Strawbridge (who also worked closely with Reiter), asserting that these supervisors "corroborated" his version of the Recommendation Form "as authentic." Reiter reiterated his previous arguments, claiming he was entitled to either immediate promotion or a Special Selection Board that should reconsider his candidacy using the version of the Recommendation Form he received. Alternatively, Reiter argued that, at the very least, he should be given the opportunity to address any concerns with the Recommendation Form Harris submitted.

Once again, the Correction Board sought an advisory opinion from the Air Reserve Personnel Center. This time, the advisory opinion recommended convening a Special Selection Board to reconsider Reiter's candidacy. Per the advisory opinion, the Special Selection Board

should use the Recommendation Form submitted by Harris that listed Reiter as the second choice (as it was the only Recommendation Form the Promotion Board received), but the Special Selection Board should nonetheless provide Reiter the opportunity "to submit comments . . . to the promotion board" regarding the "documents in his[] officer selection record." Oct. 2, 2018 Advisory Op., R.19-1 at PageID 170 (citing 10 U.S.C. § 14107(a)(7)(A)). Reiter submitted a response to the advisory opinion arguing that the only way to cure the "injustice" of the process would be to immediately approve his promotion, but if a Special Selection Board convenes, according to Reiter, the "facts and timing" indicate Harris intended to submit the version of the Recommendation Form that lists Reiter as the top candidate. Resp. to Oct. 2, 2018 Advisory Op., R.19-1 at PageID 179, 182-83.

After reviewing the advisory opinion and Reiter's response, the Correction Board explained that because Harris confirmed via email her intent to list Reiter as the second choice— consistent with the only Recommendation Form she submitted to the Promotion Board—Reiter did not provide sufficient evidence to establish that he should be considered for the promotion as the top candidate. However, because Reiter should have had the opportunity to review the files the Promotion Board considered, *see* 10 U.S.C. § 14107(a)(7)(A), and he was never sent the version of the Recommendation Form used to evaluate his candidacy, the Correction Board ordered a Special Selection Board to convene, giving Reiter an "opportunity to provide a letter to the Board President" to discuss any relevant concerns with his record. Jan. 24, 2019 Corr. Bd. Op., R.19-1 at PageID 96.

### C. Special Selection Board

In the leadup to the hearing, Reiter sent a letter to the Special Selection Board's President, once again arguing that the Recommendation Form he received—in which he was listed as the top candidate—should serve as his official recommendation from Harris. After considering Reiter's

letter and record, the Special Selection Board did not select Reiter for promotion. Because he was not promoted, Reiter retired as a Lieutenant Colonel in 2021.[3]

### D. Present Lawsuit

Reiter characterized the Special Selection Board's denial as an arbitrary and capricious final agency action, so he sought relief in federal court, filing this Administrative Procedure Act claim against the Secretary of the Air Force. The parties filed cross-motions for judgment on the administrative record. A magistrate judge considered the motions and recommended granting judgment in favor of the Secretary of the Air Force. Reiter filed objections, but the district court adopted the magistrate judge's reasoning. Reiter now appeals the judgment in favor of the Secretary of the Air Force.

### II. STANDARD OF REVIEW

"Federal courts have the authority to review the decision of a military board of correction under the Administrative Procedure Act (APA)." *Bolton v. Dept. of the Navy Bd. for Corr. of Naval Recs.*, 914 F.3d 401, 406 (6th Cir. 2019) (citing 5 U.S.C. § 701 *et seq.*; *Piersall v. Winter*, 435 F.3d 319, 323-25 (D.C. Cir. 2006)). And we review the district court's decision de novo. *Broadgate, Inc. v. Su*, 124 F.4th 985, 988 (6th Cir. 2024). Much like other agency action reviewed under the APA, we can set aside a Correction Board decision that is "arbitrary, capricious[,] or not based on substantial evidence." *Bolton*, 914 F.3d at 406 (quoting *Chappell v. Wallace*, 462 U.S. 296, 303 (1983)); *see also* 10 U.S.C. § 1558(f)(3)(A). An action is arbitrary and capricious if the agency (1) "relied on an impermissible factor," (2) "entirely failed to consider an important aspect of the problem," (3) "offered an explanation for its decision that runs counter to the evidence before the

---

[3] Without the promotion, Reiter remained an O-5 (Lieutenant Colonel) and was required to retire at 28 years of service. 10 U.S.C. § 14507(a). Had he received the promotion, he would have been able to retire at 30 years of service. 10 U.S.C. § 14507(b).

agency," or (4) "offered an explanation that 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *U.S. Sportsmen's All. Found. v. Ctrs. for Disease Control & Prevention*, 167 F.4th 813, 822-23 (6th Cir. 2026) (quoting *Ky. Waterways All. v. Johnson*, 540 F.3d 466, 474 (6th Cir. 2008)). And an action is supported by substantial evidence if the administrative record "contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (cleaned up) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high"; "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229).

As both parties recognize, decisions regarding military personnel records are unique agency actions. When it comes to correcting military personnel records, Congress has made it clear that the Secretary—who acts through the Correction Board—has significant discretion: "[t]he Secretary of a military department *may* correct any military record of the Secretary's department *when the Secretary considers it necessary* to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) (emphasis added); *see also Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1513 (D.C. Cir. 1989) ("The statutory provisions at issue here draw a . . . distinction between the objective existence of certain conditions and the Secretary's determination that such conditions are present."). We apply an "extra-deferential standard . . . 'to ensure that the courts do not become a forum for appeals by every soldier dissatisfied' with military action against him, 'a result that would destabilize military command and take the judiciary far afield of its area of competence.'" *Bolton*, 914 F.3d at 407 (quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)).

### III. ANALYSIS

Reiter makes three arguments on appeal. First, he argues the Recommendation Form that both the Promotion Board and the Special Selection Board considered—which listed him as the

second choice—is not a valid military record. Second, he asserts the Correction Board acted arbitrarily and capriciously (and without substantial evidence) when it determined that the Recommendation Form listing Reiter as the second choice was the correct version to use. Finally, he claims the Correction Board acted arbitrarily and capriciously by not seeking an additional advisory opinion that investigated perceived factual ambiguities.

### A. Harris's Submitted Recommendation Form is a Valid Record

Reiter contends the version of the Recommendation Form Harris submitted is not a valid military record because he did not receive a copy of it before the Promotion Board initially considered his candidacy. In essence, Reiter argues that because Harris was supposed to provide him a copy of the Recommendation Form after submitting it to the Promotion Board, failing to do so makes that version of the Recommendation Form a nullity.

Air Force regulations prescribe the procedure by which a Senior Rater submits a Recommendation Form to the Promotion Board. The Senior Rater completes a Recommendation Form for an officer that is eligible for promotion and "[s]ubmit[s] the completed form to [the Promotion Board]" for consideration. AFI 36-2504 § 1.6 (Jan. 9, 2003). The Senior Rater then provides the officer "a copy" of the Recommendation Form that was submitted. *Id.*

Reiter is correct that Harris did not follow that process; Reiter was not provided a copy of the Recommendation Form Harris submitted to the Promotion Board. But the Air Force regulations account for situations in which the Recommendation Form submitted to the Promotion Board does not match the Recommendation Form provided to the officer. And, according to the regulations, this procedural misstep does not render the submitted Recommendation Form invalid.

The officer is responsible for "ensur[ing] [his or her] own selection record is correct and up-to-date before the convening of the [Promotion Board]." *Id.* § 1.7; *see also* Air Reserve Personnel Ctr. Mem., R.19-1 at PageID 114-15 (explaining that the officer is "responsible for reviewing and correcting the contents of [his or her] . . . [Promotion Form]" and should "ensure

8

the accuracy of [the] record (specifically, the portion that will be reviewed by the promotion board) prior to the board convene date"). That means the officer must proactively review his or her file "for accuracy of personnel data." AFI 36-2504 § 1.7 (Jan. 9, 2003). If the officer "discovers an error on the [Recommendation Form], the officer can report the circumstances" to seek a correction. *Id.* Alternatively, "if, in exercising reasonable diligence, [the officer] should have discovered an error or omission in [a] record" but failed to "take[] timely corrective action," the process continues with the version the Senior Rater submitted. *See* Air Reserve Personnel Ctr. Mem., R.19-1 at PageID 114 (citing AFI 36-2504 § 1.7 (Jan. 9, 2003)). In either scenario, a Senior Rater's failure to provide the officer with a proper copy of the Recommendation Form does not invalidate the record. The record remains the base from which the Promotion Board considers the officer's promotion.

Reiter does not point to any text in the Air Force regulations that grant the Promotion Board, the Correction Board, or a Special Selection Board the authority to invalidate a Recommendation Form submitted by a Senior Rater. Instead, Reiter claims that the Air Force regulations protect his right to review and comment on the information submitted to the Promotion Board that will influence his candidacy, yet he was not afforded the opportunity to do so. According to Reiter, invalidating the Recommendation Form that Harris submitted is the only way to correct this injustice. As the Correction Board and the district court acknowledged, Reiter established that his procedural right to comment on the proper record was initially violated. But his argument still fails because the Correction Board fixed the mistake; the proper remedy is providing him the opportunity to comment on his personnel file, not invalidating the record that his Senior Rater submitted. *See* 10 U.S.C. § 14107(a)(7)(A) (explaining that information "regarding an eligible officer . . . furnished to a selection board" should be "made available to such officer," and the officer should be "afforded a reasonable opportunity to submit comments on that information to the promotion board"). And that is precisely what the Correction Board did. The Correction Board ordered a Special Selection Board to convene, and it provided Reiter the

opportunity to comment on his personnel file via a letter. He was thus made whole—any initial error was corrected. The Recommendation Form that Harris submitted to the Promotion Board remains a valid record, and the Correction Board remedied the procedural misstep through proper means.

**B. The Decision to Use Harris's Submitted Recommendation Form Was Proper**

Reiter argues that even if the Recommendation Form that Harris submitted is valid (which it is), the Correction Board acted arbitrarily and capriciously, and without sufficient evidence, by deeming it the "correct" version to consider while evaluating his potential promotion. We disagree.

Promotions are based on the information in an officer's personnel file, furnished according to the military department's regulations. *See* 10 U.S.C. §§ 14101 (establishing promotion boards), 14107 (instructing the Secretary to promulgate regulations for furnishing personnel information to promotion boards). According to the Air Force's regulations, for the Promotion Board to consider a Recommendation Form, it must be submitted directly to the Promotion Board by a Senior Rater. AFI 36-2504 § 1.6 (Jan. 9, 2003); *see also* Air Reserve Personnel Ctr. Mem., R.19-1 at PageID 119 (noting that Recommendation Forms will only be accepted if submitted through the approved methods). Thus, as the Correction Board explained (explicitly and also implicitly by adopting the advisory opinion), the only Recommendation Form the Promotion Board could have used to evaluate Reiter's candidacy was the version Harris submitted, which listed Reiter as the second choice. Jan. 24, 2019 Corr. Bd. Op., R.19-1 at PageID 96 ("[Reiter's] Senior Rater signed and sent to the [Promotion] Board a [Recommendation Form] assigning him a #2 rating."); *see also* Oct. 2, 2018 Advisory Op., R.19-1 at PageID 169 (explaining that the only Recommendation Form submitted to the Promotion Board regarding Reiter's candidacy was the version Harris submitted listing Reiter as the second choice). The Correction Board made a "rational connection between the facts [in the record] and the choice made" when it determined the Recommendation Form that Harris submitted was the correct version for purposes of evaluating Reiter's candidacy. *See U.S.*

*Sportsmen's All. Found.*, 167 F.4th at 821 (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The decision was based on the only Recommendation Form eligible for consideration and statements from the Senior Rater who confirmed its accuracy. The Correction Board rationally connected the relevant facts in the record to its conclusion. It was, therefore, not arbitrary and capricious.

Additionally, the Correction Board's decision was supported by substantial evidence. As discussed above, the record indicated that Harris only submitted one Recommendation Form to the Promotion Board concerning Reiter's candidacy, and Harris reiterated that "the correct" Recommendation Form for Reiter listed him as the second choice—she listed a different officer as the top candidate. *See* Email Exchange, R.19-1 at PageID 151. These facts provide sufficient evidence to support the Correction Board's conclusion.

Reiter asserts that the Correction Board improperly assumed that the version of the Recommendation Form Harris submitted to the Promotion Board was the correct version to consider. To his credit, Reiter acknowledges that he must "overcome the 'strong but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.'" *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) (citation omitted). But his efforts to do so fall short.

Reiter first insists the Correction Board should have applied the presumption to the version of the Recommendation Form he received in the mail. But that version was never submitted to the Promotion Board. Further, Harris questioned the authenticity of the version Reiter received in the mail, finding it "distressing" that it bore what appeared to be her signature. Email Exchange, R.19-1 at PageID 151. Reiter provides no support for his contention that his version should be given more weight, and it runs contrary to the Air Force's regulations that outline the specific method by which a Recommendation Form becomes part of an officer's personnel file—the Senior Rater must submit it directly to the Promotion Board. AFI 36-2504 § 1.6 (Jan. 9, 2003). Harris should

have sent a copy of that version to Reiter. She didn't. But that failure does not elevate the version of the Recommendation Form he inexplicably received.

Next, Reiter construes Harris's email—in which she confirms that the version of the Recommendation Form she submitted to the Promotion Board is accurate—as equivocal. Reiter fixates on what Harris did not say in her email: "no information about how the divergent [Recommendation Forms] were created, why she signed two [Recommendation Forms]," etc. Appellee Br. 31, D.13. But Harris never said she signed the version of the Recommendation Form Reiter received. In fact, Harris said she "ha[d] no idea how [Reiter] received what he shares is my signature on the [Recommendation Form]," and Harris found it "distressing" that Reiter had a version with her signature. Email Exchange, R.19-1 at PageID 151. Harris's statement is clear: after a quick look at her personal records, Harris "was able to resolve right away" that Reiter was the second choice, and a different officer was ranked as the top candidate. *Id.* But even setting aside Reiter's unnatural interpretation of Harris's statements, in our deferential appellate posture, we uphold the Correction Board's decision because it was not arbitrary and capricious, and Harris's statements allow a reasonable mind to accept the Correction Board's conclusion. *See Biestek*, 587 U.S. at 103.

Finally, Reiter claims the Recommendation Form that Harris submitted to the Promotion Board "contains fatal flaws that call into question its legitimacy." Appellee Br. 31, D.13. The alleged flaw: a note on the form stating Reiter is the "#2/4 JA DPs." *Id.* This refers to one of many notes on the Recommendation Form, and Reiter asserts that this note is factually impossible as it implies there were four officers that were listed as "definitely promote" (or, "DP") when Reiter's official recommendation "2/2/4" indicates that there were only two officers that were listed as "definitely promote." *See* Recommendation Form, R.19-1 at PageID 154. Assuming the note actually creates an inconsistency, Harris still clarified that the ultimate recommendation is correct—Reiter was ranked second. The record supports the Correction Board's decision.

### C. The Correction Board Did Not Need an Additional Advisory Opinion

Reiter also argues that the Correction Board erred by not obtaining an additional advisory opinion that analyzed the facts and collected additional records relevant to his claims. But the Correction Board sought an advisory opinion for each of Reiter's requests for reconsideration. Those advisory opinions analyzed the facts. And the Correction Board "is not an investigative body; therefore, the applicant bears the burden of providing evidence of an error or injustice." AFI 36-2603 § 2.3 (Sep. 18, 2017), *amended by* AFI 36-2603 (Oct. 4, 2022).[4] While "the Board *may*, in its discretion, hold a hearing or call for additional evidence or opinions in any case," it is under no obligation to do so. *Id.* (emphasis added). There was sufficient evidence in the record to support the Correction Board's conclusion, and the Correction Board provided a reasoned explanation based on such evidence. The Correction Board did not act arbitrarily and capriciously, nor abuse its discretion, when it did not seek *additional* advisory opinions in this matter.

### IV. CONCLUSION

For these reasons, we **AFFIRM**.

---

[4] The 2017 version of this regulation was in effect when Reiter sought reconsideration from the Correction Board. The 2022 amendments added an introductory subsection that moved this language to section 2.4. *See* AFI 36-2603 §§ 2.1, 2.4 (Oct. 4, 2022).